1  William A. Hanssen (Bar No. 110613)
   Suzanne V. Stouder (Bar No. 161077)
2  DRINKER BIDDLE & REATH LLP
   333 South Grand Avenue, Suite 1700
3  Los Angeles, CA 90071-1504
   Telephone: (213) 253-2300
4  Facsimile: (213) 253-2301
   William.hanssen@dbr.com
5  Suzanne.stouder@dbr.com

6  Attorneys for Plaintiff
   *The John Hancock Life*
7  *Insurance Company (U.S.A.)*

8           UNITED STATES DISTRICT COURT
            CENTRAL DISTRICT OF CALIFORNIA
9

10 THE JOHN HANCOCK LIFE
   INSURANCE COMPANY (U.S.A.),          Case No.  CV12·2038 JAK (AGR)

11            Plaintiff,               **COMPLAINT**

12         v.

13 CLIVE TAYLOR, LUANN KING,
   KENNETH NUTLEY and DOES 1-10,
14
              Defendants.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff The John Hancock Life Insurance Company (U.S.A.) ("Plaintiff" or "John Hancock"), for its Complaint against Defendant Clive Taylor, Defendant Luann King, Defendant Kenneth Nutley and against Defendants John Does 1-10 (collectively the "Defendants"), alleges as follows:

## NATURE OF ACTION

1.    This is an action for declaratory judgment, fraud and negligence to determine John Hancock's rights and obligations regarding a purported life insurance policy with a death benefit of 1 million dollars that John Hancock issued to Irene S. Bates, which if valid would have insured the life of Ms. Bates, and to recover damages.  Ms. Bates is the purported named insured on life insurance policy no. 94818952 which was issued and delivered by John Hancock on or about March 10, 2010 (the "Purported Policy").  John Hancock does not believe that the Purported Policy ever took effect or was a valid contract at any time.

2.    In or around late-2009 and early-2010, the Defendants conspired in a scheme to defraud John Hancock into issuing the Purported Policy, which Defendants knew was not being procured to meet legitimate insurance or estate planning needs but was instead being procured as a speculative investment for the benefit of third-party investors lacking insurable interest in the life of the insured. Such an investment is an illegal wager contract that is prohibited as a matter of law and under the terms of the Purported Policy.

3.    The Defendants accomplished their scheme through an arrangement designed to disguise the lack of insurable interest by misrepresenting to John Hancock material information about the purpose of the Purported Policy, the source of funding for the purported premiums on the Purported Policy, and the income and net worth of the insured.

4.    John Hancock seeks a declaratory judgment that the Purported Policy is either void or voidable because it was procured: (i) through material misrepresentations and concealment; and (ii) as a speculative investment for the

COMPLAINT

ultimate benefit of a disinterested third party lacking an insurable interest in the life of Ms. Bates.  John Hancock also seeks damages it has suffered as a result of the Defendants' fraud and negligence.

## PARTIES

5.      Plaintiff John Hancock is a Michigan corporation with its principal place of business in Massachusetts.  It is a financial services company whose business activities include providing life insurance to consumers.  Accordingly, John Hancock is a citizen of Michigan and Massachusetts within the meaning of 28 U.S.C. § 1332.

6.      Defendant Clive Taylor is an independent life insurance broker. During all relevant times, Taylor has been engaged in the business of soliciting sales of life insurance policies to consumers from life insurance companies such as John Hancock.  Upon information and belief Taylor maintains a primary residence and/or principal place of business at 1101 California Avenue, Suite 100, Corona, California  92881 and is a citizen of the State of California within the meaning of 28 U.S.C. § 1332.

7.      Defendants Luann King and Kenneth Nutley are the purported owners and beneficiaries of the Purported Policy.  Upon information and belief Nutley and King maintain a residence and/or principal place of business at 1101 California Avenue, Suite 100, Corona, California  92881 and are citizens of the State of California within the meaning of 28 U.S.C. § 1332.

8.      John Does 1-10 are unknown investors and/or beneficial interest owners for whose benefit the Purported Policy was originally intended.

## JURISDICTION

9.      This case seeks, inter alia, a declaratory judgment pursuant to 28 U.S.C. § 2201 to adjudicate the rights and legal relations of the parties hereto.

10.     This Court has jurisdiction over this diversity action pursuant to 28 U.S.C. §1332.  The amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of diverse states.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

### FACTUAL ALLEGATIONS

12.     John Hancock is, and during all relevant times has been, engaged in the business of selling life insurance to consumers.

13.     On information and belief, on or about April 13, 2010, the Defendants prepared an application seeking the issuance of the Purported Policy (the "Life Insurance Application").  The Life Insurance Application sought coverage for the face amount of $1,000,000.  A true and correct copy of the Life Insurance Application is attached hereto, and incorporated herein by reference, as Exhibit 1.

14.     The Life Insurance Application bears what purports to be the signature of Ms. Bates as the proposed owner of the Purported Policy and as the proposed insured, and the signature of Defendant Taylor as the agent procuring the Purported Policy.

15.     As part of the Life Insurance Application, Taylor falsely represented to John Hancock that no one other than the owner of the Purported Policy (*i.e.*, Ms. Bates) would have "any right, title or other legal or beneficial interest in any policy" issued by John Hancock.

16.     Additionally, and upon information and belief, in the Life Insurance Application Defendants falsely represented Ms. Bates' annual income to be $178,000 and her household net worth to be $1,400,000.

17.     These false representations were made for the purpose of inducing John Hancock to issue a life insurance policy with a face value of $1,000,000 on the life of Ms. Bates.

18.     Specifically, the Life Insurance Application includes the following answers to questions relating to the ownership and funding of the Purported Policy:

"8.  Is there, or are you considering entering into, an understanding or agreement providing for any person or entity, other than the Owner and beneficiaries specified in this application, to have any right, title or other legal or beneficial interest in any policy issued on the life of the Proposed Life Insured(s) as a result of this application?"  In answer, the "**No**" box is checked.

"9.  Have you been offered any money or other considerations by any person or entity in connection with this application?"  In answer, the "**No**" box is checked.

"10. a) What is the source of the premiums for the policy(ies) currently applied for?  **Personal Income**."

"10. b)  Will the Owner be receiving funding for the premiums from an individual and/or entity other than the Proposed Life Insured(s) or the Proposed Life Insured's employer?"  In answer, the "**No**" box is checked.

Each of these questions was answered falsely.

19.    The Life Insurance Application also includes the following answers to questions relating to the purpose of the Purported Policy and Ms. Bates' financial position:

"12. a) What is the purpose of this insurance? (e.g. estate conservation, buy-sell, keyperson)  **Provide for family, pay expenses**"

"12. b) Gross annual earned income (salary, commissions, bonuses, etc.)  **$127,000.00**"

"12. c) Gross annual unearned income (dividends, interest, gross real estate income, etc.)  **$51,000.00**"

"12. d) Household net worth (combined)  **$1,400,000.00**"

20.     The Life Insurance Application provides that the owner and the proposed insured (*i.e.*, Ms. Bates) declares that the statements and answers given in the application are "complete and true."

21.     On January 27, 2010, Defendant Taylor completed and signed an agent report in connection with the application for the Purported Policy. A true and correct copy of the agent report is attached hereto, and incorporated herein by reference, as Exhibit 2 (the "Agent Report").

22.     Defendant Taylor provided the following answers to questions in the Agent Report:

> "4. a) Question No. 8 of the application asks if there is, or if the applicant is considering entering into, an understanding or agreement providing for any person or entity, other than the Owner and the beneficiaries specified in the application, to have any right, title or other legal or beneficial interest for any policy issued on the life of the Proposed Life Insured(s) as a result of the application. Examples of such an understanding or agreement include, but are not limited to, arrangements where the proposed Owner has or will have an option to sell to a third party the Owner's interest in the policy, or where a third party has or will have an option to buy the proposed Owner's interest in the policy. With this understanding, has Question No. 8 been answered appropriately?" In answer, the "**Yes**" box is checked.
>
> "4. c) Will the premiums, now or in the future, be funded by a loan or other means from someone other than the Insured or the Insured's employer?" In answer, the "**No**" box is checked.

Each of these questions was answered falsely.

23.     In the Agent Report, Defendant Taylor represented, acknowledged and agreed to the following statement: "I declare that I have asked the Proposed Life

Insured(s) and/or the Owner each question on the application.  The answers have been recorded by me exactly as stated and I know of nothing affecting the insurability of the Proposed Life Insured(s) which is not fully recorded in this application.

24.     In reliance on the statements and representations made by the Defendants in the Life Insurance Application and Agent Report, John Hancock issued and delivered the Purported Policy on or about March 10, 2010.  The Purported Policy, if valid would provide a face amount death benefit of $1,000,000. The Purported Policy indicates Ms. Bates as owner and Joseph M. Bates, Ms. Bates' son as beneficiary.  A true and correct copy of the Purported Policy is attached hereto, and incorporated herein by reference, as Exhibit 3.

25.     Upon information and belief, the Purported Policy was not actually owned by Ms. Bates, and was not intended or expected to benefit Joseph M. Bates. Rather, the Purported Policy, or the beneficial interest in the Purported Policy, was at all times owned by and expected to benefit Defendants.

26.     Upon information and belief, there was an agreement and/or understanding that predated the issuance of the Purported Policy that the Purported Policy, or the beneficial interest therein, would be transferred to individuals that lacked an insurable interest in Ms. Bates' life.

27.     On or about April 15, 2010, John Hancock received a personal check from Ms. Bates in the amount of $44,781.58 written from an account at USAA Federal Savings Bank which purported to be the initial premium payment on the Purported Policy.  Upon information and belief, this purported premium payment was made or advanced by Defendants.

28.     On or about Apr 12, 2011, John Hancock received an additional purported premium payment in the amount of $34,013.00.  Upon information and belief, this purported premium payment was also made or advanced by Defendants.

29.     Following the issuance of the Purported Policy, John Hancock discovered that the representations and statements made by the Defendants in the Life Insurance Application, and by Defendant Taylor in the Agent Report, were materially false and misleading.

30.     On February 8, 2012, Ms. Bates submitted to John Hancock a complaint form (the "Complaint Form"), which described some of the misrepresentations that were made to John Hancock in connection with the issuance of the Purported Policy.

31.     In particular, Ms. Bates represented to John Hancock that:

    a.  The Life Insurance Application shows fraudulent information;

    b.  There was false income and asset information on the Life Insurance Application; and

    c.  The were false signatures on the "income/asset form."

32.     Specifically, by way of example only, through Ms. Bates' submission of the Complaint Form and otherwise, after John Hancock issued the Purported Policy it discovered that:

    a.  Ms. Bates' net worth and income were and remain materially and substantially less than the amounts claimed on the Life Insurance Application and Agent Report.

    b.  Ms. Bates did not directly or indirectly fund the purported premium payments on the Purported Policy and does not intend to fund future purported premium payments.

    c.  Ms. Bates was a party to an undisclosed arrangement through which purported premium payments would be advanced by Defendants for the Purported Policy.

    d.  Ms. Bates was solicited to apply for the Purported Policy and was promised remuneration for her participation in the scheme from the proceeds of a sale of the Purported Policy to investors.

33.     On February 24, 2012, John Hancock received a request to change the ownership of the Purported Policy to Defendants Kenneth Nutley and Luann King. The change of ownership form submitted to John Hancock on February 24, 2012 purported to have been signed by Ms. Bates and Defendant King and was faxed to John Hancock.  By the terms of the Purported Policy, the ownership change is effective as of the date that Ms. Bates signed the written request for a change of ownership.

34.     In connection with the issuance of the Purported Policy, John Hancock incurred certain costs and expenses, including commissions and bonuses to Defendant Taylor and others, as well as investigative costs and legal expenses.

35.     John Hancock is ready, willing and able to tender any purported premium payments it has received into the Court's custody pending entry of this Court's judgment.

### FIRST CLAIM FOR RELIEF

**Declaratory Judgment Regarding Material Misrepresentations**

**(Against All Defendants)**

36.     John Hancock realleges the allegations contained in paragraphs 1 to 32 supra as though fully set forth herein.

37.     There exists an actual controversy between John Hancock and Defendants that lies within the jurisdiction of this Court pursuant to 28 U.S.C. § 2201.

38.     The Defendants made false, misleading and material misrepresentations in the Life Insurance Application and Agent Report submitted to John Hancock in applying for the Purported Policy.  The misrepresentations included, specifically, that Ms. Bates: (i) had a net worth of $1,400,000; (ii) had an annual income of $178,000; (iii) had not been offered money or other consideration for submitting the Life Insurance Application; (iv) would be funding the premium

payments herself with cash; and (v) was procuring the Purported Policy to provide for her family and to pay expenses.

39.     In issuing the Purported Policy, John Hancock relied on the foregoing representations made in the Life Insurance Application, Agent Report and other documents completed and submitted to John Hancock by or on behalf of the Defendants.  John Hancock reasonably and rightfully relied on these misrepresentations, which it believed to be truthful and accurate.

40.     The foregoing misrepresentations were material to the acceptance of the risk and/or the hazard assumed by John Hancock, and John Hancock would not have issued the Purported Policy if the true facts had been made known as required by the Life Insurance Application, Agent Report and other documents submitted at the time of application.

41.     Pursuant to Cal. Ins. Code §§ 334 and 359, John Hancock is entitled to rescind the Purported Policy because the misrepresentations in the Life Insurance Application, Agent Report and other documents submitted at the time of application were material to the acceptance of the risk on the Purported Policy, because John Hancock reasonably relied on these misrepresentations in deciding to issue the Purported Policy, and because John Hancock would not have issued the Purported Policy had it been aware of the true facts.

42.     John Hancock, in a timely manner, affirmatively contests the validity of the Purported Policy in light of the foregoing misrepresentations in the Life Insurance Application, Agent Report and other documents submitted at the time of application.

43.     Accordingly, John Hancock is entitled to a declaratory judgment that John Hancock is entitled to rescind the Purported Policy based on the foregoing material misrepresentations and that such rescission will be effective upon entry of this Court's judgment; and that John Hancock has no obligation to pay benefits

COMPLAINT

under the Purported Policy because upon entry of the Court's judgment it will have been rescinded.

44.     John Hancock is also entitled to a declaratory judgment that, because the Defendants procured the Purported Policy through a scheme to defraud John Hancock, under Cal. Ins. Code. § 483(c), John Hancock need not return premiums paid to it as part of this fraudulent scheme.  Moreover, and in the alternative, Defendants' conduct was so willful, deliberate, self-serving, knowing and wrongful to justify the imposition of punitive damages, not only to punish Defendant for their conduct as alleged herein but also to deter the Defendants and others from behaving in a similar fashion in the future.  The punitive damage award John Hancock is entitled to is, at a minimum, the amount of premiums paid to it for the Purported Policy.  Alternatively, John Hancock is entitled to offset its tender of purported premiums by the amount of the legal fees, costs and expenses it incurred in issuing and investigating the Purported Policy.

## SECOND CLAIM FOR RELIEF

### Declaratory Judgment Regarding Insurable Interest

### (Against All Defendants)

45.     John Hancock realleges the allegations contained in paragraphs 1 to 44 supra as though fully set forth herein.

46.     There exists an actual controversy between John Hancock and the Defendants that lies within the jurisdiction of this Court pursuant to 28 U.S.C. § 2201.

47.     Life insurance policies lacking an insurable interest at the time of issuance are unenforceable wagering contracts and are void pursuant to Cal. Ins. Code § 10110.1.

48.     The Purported Policy was procured by John Does 1-10, parties lacking an insurable interest in the life of the insured.  This was accomplished through use of an arrangement designed to disguise the lack of insurable interest by installing

COMPLAINT

Ms. Bates as both the owner and insured and naming Joseph M. Bates as the beneficiary of the Purported Policy.  Joseph M. Bates was installed as the beneficiary in furtherance of a scheme to evade the public policy against "gaming" through life insurance purchases, and as an artifice designed to give the appearance of an insurable interest where there is no legitimate insurable interest in violation of the insurable interest laws pursuant to Cal. Ins. Code §10110.1.

49.     Further, the Defendants deliberately concealed from John Hancock the fact that the Purported Policy was being obtained as a speculative investment for the ultimate benefit of a third-party investor lacking insurable interest in the life of the insured, which entitles John Hancock to rescind the Purported Policy pursuant to Cal. Ins. Code. § 331.

50.     Accordingly, John Hancock is entitled to a declaratory judgment that the Purported Policy lacked an insurable interest at the time it was issued and thus is void; or, alternatively, that it is voidable and John Hancock is entitled to rescind the Purported Policy, with such rescission effective upon entry of this Court's judgment; and in all events that John Hancock thus has or will have no obligation to pay benefits under the Purported Policy.

51.     John Hancock is also entitled to a declaratory judgment that, because the Defendants procured the Purported Policy through a scheme to defraud John Hancock, under Cal. Ins. Code. § 483(c), John Hancock need not return purported premiums paid to it as part of this fraudulent scheme.  Moreover, and in the alternative, Defendants' conduct was so willful, deliberate, self-serving, knowing and wrongful to justify the imposition of punitive damages, not only to punish Defendant for their conduct as alleged herein but also to deter the Defendants and others from behaving in a similar fashion in the future.  The punitive damage award John Hancock is entitled to is, at a minimum, the amount of purported premiums paid to it for the Purported Policy.  Alternatively, John Hancock is entitled to offset

its tender of premiums by the amount of the legal fees, costs and expenses it incurred in issuing and investigating the Purported Policy.

### THIRD CLAIM FOR RELIEF

**Fraud**

**(Against All Defendants)**

52.   John Hancock realleges the allegations contained in paragraphs 1 to 48 supra as though fully set forth herein.

53.   This is an action for fraud under common law and pursuant to Cal. Civ. Code §§ 1572, 1573, and 1709.

54.   The Life Insurance Application and Agent Report contained numerous false representations, each of which was material to John Hancock's decision to issue the Purported Policy.

55.   On information and belief, at all relevant times, including when the Life Insurance Application was executed and submitted to John Hancock, the initial purported premium payment was submitted, and the Purported Policy was delivered, the Defendants were aware of the falsity of those representations, which were made with the intent that John Hancock rely upon them.

56.   These material misrepresentations were part of a scheme intended to defraud John Hancock conceived and orchestrated by the Defendants.  Specifically, the Defendants knowingly and intentionally defrauded John Hancock into issuing a purported life insurance policy with a death benefit of $1,000,000 by misrepresenting the income and net worth of the insured, the purpose of the Purported Policy, and the source of payments for the Purported Policy.

57.   At all times prior to the issuance of the Purported Policy, John Hancock believed that the representations contained in the Life Insurance Application, Agent Report, and other documents were truthful and accurate.  In issuing the Purported Policy, John Hancock reasonably and rightfully relied on the

foregoing representations made in the Life Insurance Application, Agent Report and other documents.

58.     As a result of the fraudulent scheme carried out by the Defendants, John Hancock issued the Purported Policy, and has suffered injury, in an amount to be proven at trial, arising from, without limitation:

    a.  The commissions and bonuses paid on the Purported Policy;

    b.  The costs of administering the Purported Policy;

    c.  The costs of investigating the issuance of the Purported Policy; and

    d.  The risk of being required to pay a benefit on the fraudulently procured Purported Policy.

59.     Accordingly, John Hancock is entitled to judgment that the Defendants defrauded it in obtaining issuance of the Purported Policy, and are liable for John Hancock's injuries.

60.     John Hancock is further entitled to recover actual and punitive damages in light of the conduct of the Defendants, committed with malice and deliberate fraud.

## FOURTH CLAIM FOR RELIEF

### Negligent Misrepresentation

### (Against All Defendants)

61.     John Hancock realleges the allegations contained in paragraphs 1 to 57 supra as though fully set forth herein.

62.     This is an action for negligent misrepresentation under common law and pursuant to Cal. Civ. Code § 1710.

63.     The Life Insurance Application and Agent Report contained numerous misrepresentations, each of which was material to John Hancock's decision to issue the Purported Policy.

COMPLAINT

64.     Specifically, in the application for the Purported Policy, the Defendants, made misrepresentations regarding:  (i) Ms. Bates' financial condition; (ii) the source of the purported premiums for the Purported Policy; (iii) whether there was an expectation that the Purported Policy would be transferred to a third party; and (iv) and whether Ms. Bates had been offered any financial inducements to apply for the Purported Policy.

65.     Upon information and belief, at the time that Defendants made these representations to John Hancock, they knew these representations were false and/or had no reason to believe they were true.

66.     Defendants had a duty to disclose to John Hancock correct and complete information in connection with the application for the Purported Policy.

67.     On information and belief, at all relevant times, including when the Life Insurance Application was executed and submitted to John Hancock, the initial purported premium payment was submitted, and the Purported Policy was delivered, the Defendants knew or should have known that John Hancock would rely on the foregoing representations made in the Life Insurance Application, Agent Report and other documents.

68.     At all times prior to the issuance of the Purported Policy, John Hancock believed that the representations contained in the Life Insurance Application, Agent Report, and other documents were truthful and accurate.  In issuing the Purported Policy, John Hancock reasonably and rightfully relied on the foregoing representations made in the Life Insurance Application, Agent Report and other documents.

69.     As a result of the negligent misrepresentations made by the Defendants, John Hancock issued the Purported Policy, and has suffered injury, in an amount to be proven at trial, arising from, without limitation:

        e.   The commissions and bonuses paid on the Purported Policy;

        f.   The costs of administering the Purported Policy;

COMPLAINT

g.  The costs of investigating the issuance of the Purported Policy; and

h.  The risk of being required to pay a benefit on the fraudulently
procured Purported Policy.

### FIFTH CLAIM FOR RELIEF

### Civil Conspiracy

### (Against All Defendants)

70.   John Hancock realleges the allegations contained in paragraphs 1 to 57, *supra* as though fully set forth herein.

71.   At all times material to this action, the Defendants formed and participated in a conspiracy among themselves, and with other persons known and unknown, the purposes of which were, *inter alia:* (i) to fraudulently misrepresent the purpose of the Purported Policy, the source of the purported premium payments and the annual income and net worth of the insured; (ii) to conceal that the Purported Policy was being obtained as a speculative investment for the ultimate benefit of a third-party investor lacking insurable interest in the life of the insured; and (iii) to defraud John Hancock into issuing a purported life insurance policy with a death benefit of $1 million.

72.   During the course of the conspiracy, the Defendants, acting in concert, engaged in numerous concerted acts to further the purposes of their conspiracy, including but not limited to those described above.  Each act of the conspiracy was ratified by the other co-conspirators, who acted as each other's agents in carrying out the conspiracy.  The Defendants engaged in the conspiracy to benefit themselves and profit from the scheme at the expense of John Hancock.

73.   As a direct and proximate result of the conduct of the Defendants, John Hancock issued the Purported Policy, and has suffered injury, in an amount to be proven at trial, arising from, without limitation:

a.  The commissions and bonuses paid on the Purported Policy;

b.  The costs of administering the Purported Policy;

c.  The costs of investigating the issuance of the Purported Policy; and

d.  The risk of being required to pay a benefit on the fraudulently procured Purported Policy.

74.   Each Defendant is jointly and severally liable for the torts of the other members of the conspiracy that were committed in furtherance of the goals of the conspiracy.

75.   Accordingly, John Hancock is entitled to judgment that the Defendants are each jointly and severally liable for John Hancock's injuries arising as a result of the torts committed in furtherance of the goals of the conspiracy.

WHEREFORE Plaintiff John Hancock seeks judgment:

a.  Declaring that the Purported Policy is and was void *ab initio* for lack of insurable interest, and that John Hancock has no obligation to pay benefits or otherwise render any performance under the Purported Policy.

b.  In the alternative, declaring that John Hancock is entitled to rescind the Purported Policy and that such rescission will be effective upon entry of this Court's judgment, at which point John Hancock will have no obligation to pay benefits or otherwise render any performance under the Purported Policy.

c.  Declaring that none of the Defendants, nor Ms. Bates, nor Joseph M. Bates have any valid right or interest or claim to any benefit under or from the Purported Policy.

d.  In the alternative, declaring that none of the Defendants, nor Ms. Bates, nor Joseph M. Bates have any valid right or interest or claim to any benefit under or from the Purported Policy upon rescission of the Purported Policy by entry of this Court's judgment.

e.  Declaring that John Hancock has no obligation to return the purported premiums because the Defendants engaged in a scheme

- 16 -

to defraud John Hancock and are not entitled to a return of any purported premiums.

f.  Alternatively, declaring that John Hancock has no obligation to return the purported premiums because the Defendants' conduct was so willful, deliberate, self-serving, knowing and wrongful to justify the imposition of punitive damages, at a minimum, in the amount of the amount of purported premiums paid to it for the Purported Policy.

g.  Alternatively declaring that, even if the Court determines that John Hancock is required to tender return of purported premiums in connection with the rescission counts, it is also entitled to offset the amount of the costs it incurred in connection with issuing and administering the Purported Policy, including without limitation, commissions and compensation it paid and its attorneys' fees, costs and expenses.

h.  Awarding all damages incurred as a result of the fraud perpetrated on John Hancock, including, but not limited to, commissions and compensations paid in connection with the Purported Policy, as well as other compensatory and consequential damages.

i.  Awarding punitive damages in addition to those prayed for with respect to the purported premiums paid for the Purported Policy.

j.  Awarding attorney fees and costs associated with bringing this action.

k.  Awarding such other relief as the Court deems just, equitable, and proper.

Dated:  March 9, 2012          DRINKER BIDDLE & REATH LLP

                               *Suzanne V. Stouder*

                               By _____
                               Suzanne Stouder
                               Attorneys for The John Hancock Life Insurance Company
                               (U.S.A.)

- 17 -

# EXHIBIT #1



**John Hancock.**
the future is yours

Service Office:
Life New Business
197 Clarendon Street
Boston MA 02116-5010

**Application for Life Insurance**
**John Hancock Life Insurance Company (U.S.A.)**
(hereinafter referred to as The Company)

Print and use black ink. Any changes must be initialed by the Proposed Life Insured(s) and Owner.

## PROPOSED LIFE INSURED(S)   LIFE ONE

| | |
|---|---|
| 1. a) Name Irene S. Bates | |
| First   Middle   Last | |
| b) Date of Birth **REDACTED** Sex ☐ M ☑ F | |
| d) Place of Birth Texas   USA | |
| State   Country | |
| e) Citizenship ☑ U.S. ☐ Other | |
| f) Social Security Number (SSN), if applicable **REDACTED** | |
| g) Driver's License No. n/a   State | |
| h) Primary Residence 2307 Via Puerta No. A | |
| Address - Street No. & Name   Apt. No. | |
| Laguna Woods   CA   92637 | |
| City   State   Zip Code | |
| i) Years at this Address   4 | |
| j) Tel. Nos. **REDACTED** | |
| k) If you live at your primary residence less than 6 months per year, provide the address for your secondary residence. | |
| Secondary Residence | |
| Address - Street No. & Name   Apt. No. | |
| City   State   Zip Code | |
| l) Years at this Address | |
| m) Occupation Retired | |
| Name of Employer | |

## LIFE TWO (Survivorship)

| | |
|---|---|
| 2. a) Name | |
| First   Middle   Last | |
| b) Date of Birth   Sex ☐ M ☐ F | |
| d) Place of Birth | |
| State   Country | |
| e) Citizenship ☐ U.S. ☐ Other | |
| f) Social Security Number (SSN), if applicable | |
| g) Driver's License No.   State | |
| h) Primary Residence | |
| Address - Street No. & Name   Apt. No. | |
| City   State   Zip Code | |
| i) Years at this Address | |
| j) Tel. Nos.   Home   Business | |
| k) If you live at your primary residence less than 6 months per year, provide the address for your secondary residence. | |
| Secondary Residence | |
| Address - Street No. & Name   Apt. No. | |
| City   State   Zip Code | |
| l) Years at this Address | |
| m) Occupation | |
| Name of Employer | |

## OWNER – Complete only if Owner is other than Proposed Life Insured(s)

If Trust Owner, complete questions 3. a), d) and e) and Trust Certification PS5101.

Trust Agreement may be required.

Provide all details as above for other Owner in Special Requests on Page 4.

3. a) Name

b) Date of Birth   month   day   year

c) Relationship to Proposed Life Insured(s)

d) Social Security/Tax ID Number, if applicable

e) Address   Street No. & Name   Apt. No.   City   State   Zip Code

4. Multiple Owners
Type of ownership  ☐ Joint with right of survivorship   ☐ Tenants in common

## BENEFICIARY INFORMATION – Subject to change by Owner

List additional beneficiaries in Special Requests on Page 4.

5. a) Name Joseph M Bates
First   Middle   Last
☑ Primary   Son   100.00%
Relationship to Proposed Life Insured(s)   Percentage

b) Name
First   Middle   Last
☐ Primary
☐ Secondary
Relationship to Proposed Life Insured(s)   Percentage   %

| | | | |
|---|---|---|---|
| NB5000CA (12/2007) | Page 1 of 6 | (US) | VERSION (01/2009) |

## EXISTING AND PENDING INSURANCE

*If more space is required attach additional page that has been signed and dated by Owner if necessary.*

6. a) Provide information for each policy in force on the Proposed Life Insured(s) with all companies, including any policy that has been sold, assigned, or settled to or with a settlement or viatical company or any other person or entity.

| Proposed Life Insured | Company | Insurance Personal | Insurance Business | Issue Date month day year | To Remain in Force? Yes | To Remain in Force? No | Amount Including Riders |
|---|---|---|---|---|---|---|---|
| ☑ One ☐ Two | New York Life | ☑ | ☐ | 6/1988 | ☑ | ☐ | $ 50,000.00 |
| ☐ One ☐ Two | | ☐ | ☐ | | ☐ | ☐ | $ |
| ☐ One ☐ Two | | ☐ | ☐ | | ☐ | ☐ | $ |
| ☐ One ☐ Two | | ☐ | ☐ | | ☐ | ☐ | $ |
| ☐ One ☐ Two | | ☐ | ☐ | | ☐ | ☐ | $ |
| ☐ One ☐ Two | | ☐ | ☐ | | ☐ | ☐ | $ |

b) Have you ever had an application for life insurance declined, postponed, rated substandard or offered with a reduced face amount?

Life One ☐ No ☑ Yes – give details

Life Two ☐ No ☐ Yes – give details

c) Including this application, total insurance currently applied for with all companies (not including informal inquiries).
Provide name of Life Insurance Company and amount applied for.

| Life One Company | Amount Including Riders | Life Two Company | Amount Including Riders |
|---|---|---|---|
| John Hancock | $ 1,000,000.00 | | $ |
| | $ | | $ |
| | $ | | $ |

d) Of the total amount applied for in c) above including this application, what is the maximum that you will accept?   Life One $ 1,000,000.00   Life Two $

## JUVENILE INSURANCE

*Complete e) & f) if juvenile insurance is applied for.*

e) Are all siblings equally insured? ☐ Yes ☐ No

f) Amount of life insurance currently in force or pending on parent(s)/guardian(s)? $

If none, provide reason.

## REPLACEMENTS – OWNER

7. Will this insurance replace existing policies or are you considering using funds from existing policies to pay premiums due on the new policy or contract?

☐ Yes ☑ No   If 'Yes', please complete the IMPORTANT NOTICE: Replacement of Life Insurance or Annuities (Standard Form), NB5017.

## FINANCIAL QUESTIONS

*Copies of financial statements, estate analyses, contractual agreements may be required.*

8. Is there, or are you considering entering into, an understanding or agreement providing for any person or entity, other than the Owner and beneficiaries specified in this application, to have any right, title or other legal or beneficial interest in any policy issued on the life of the Proposed Life Insured(s) as a result of this application?

☑ No ☐ Yes - If 'Yes', provide details

9. Have you been offered any money or other considerations by any person or entity in connection with this application?

☑ No ☐ Yes - If 'Yes', provide details

10. a) What is the source of the premiums for the policy(ies) currently applied for?  Personal Income

b) Will the Owner be receiving funding for the premiums from an individual and/or entity other than the Proposed Life Insured(s) or the Proposed Life Insured's employer?

☐ Yes - If 'Yes', answer question 11 below.   ☑ No - If 'No', proceed to question 12.

11. a) Will the premiums be financed through a loan?

☐ No - If 'No' describe the funding arrangement

☐ Yes - If 'Yes' provide the loan details in question 11 b), c), d), e) and f) below.

b) What is the annual interest rate?   %

c) In addition to repayment of principal and interest, are there other fees, charges or other consideration to be paid?

☐ No ☐ Yes - If 'Yes', provide details

## FINANCIAL QUESTIONS continued

Copies of financial statements, estate analyses, contractual agreements may be required.

11. d) What is the duration of the loan?
    e) Who is the lender?
    f) What amount and type of collateral is required to secure the loan? $ _____

| | Amount | Type of Collateral |

12. a) What is the purpose of this insurance? Provide for family, pay expenses
    (e.g. estate conservation, buy-sell, keyperson)

| | Life One | Life Two |
|---|---|---|
| b) Gross annual earned income (salary, commissions, bonuses, etc.) | $ 127,000.00 | $ |
| c) Gross annual unearned income (dividends, interest, gross real estate income, etc.) | $ 51,000.00 | $ |

d) Household net worth (combined) $ 1,400,000.00

e) In the last 5 years, has the Proposed Life Insured(s) or any business of which he/she is a partner/owner/executive had any major financial problems (bankruptcy, etc.)? Life One ☒ No ☐ Yes - give details
Life Two ☐ No ☐ Yes - give details

## BUSINESS FINANCIAL QUESTIONS

Complete for ALL Business Insurance.

Copies of financial statements may be required.

| | | Current Year | Previous Year |
|---|---|---|---|
| 13. a) | Assets | $ | $ |
| b) | Liabilities | $ | $ |
| c) | Gross Sales | $ | $ |
| d) | Net Income | $ | $ |
| e) | Fair Market Value of the business | $ | $ |

f) How was the amount applied for determined?

g) What percentage of the business is owned by the Proposed Life Insured(s)? _____ %

h) Are other partners/owners/executives insured or applying for life insurance with any company? ☐ No ☐ Yes - give details

## LIFESTYLE QUESTIONS

Please provide details in No. 18 for 'Yes' answers to Lifestyle Questions.

| | Life One | Life Two |
|---|---|---|
| 14. Do you expect to travel outside the U.S. or Canada, or change your country of residence in the next 2 years? | ☐ Yes ☒ No | ☐ Yes ☐ No |
| 15. a) Have you flown as a student pilot, licensed pilot, or crew member in any aircraft, including ultralight planes, in the last 2 years? If 'Yes', please complete Aviation Questionnaire NB5009. | ☐ Yes ☒ No | ☐ Yes ☐ No |
| b) Have you engaged in any form of motor vehicle or power boat racing, sky diving/parachuting, skin or scuba diving, hang-gliding, mountain climbing, or any other hazardous activities in the last 2 years? If 'Yes', please complete Avocation Questionnaire NB5010. | ☐ Yes ☒ No | ☐ Yes ☐ No |
| 16. a) Have you been cited for 2 or more moving violations within the last 2 years? | ☐ Yes ☒ No | ☐ Yes ☐ No |
| b) Have you been cited for driving while intoxicated or while otherwise impaired? | ☐ Yes ☒ No | ☐ Yes ☐ No |
| 17. In the last 10 years, have you been convicted of a felony offense? | ☐ Yes ☒ No | ☐ Yes ☐ No |

18. Question No. _____ Life One          Question No. _____ Life Two

## PRIMARY PHYSICIAN – PROPOSED LIFE INSURED(S)

### LIFE ONE
19. Provide name and address of primary physician.

REDACTED

### LIFE TWO
20. Provide name and address of primary physician.

Name _____
     First              Middle              Last

Address _____
        Street No. & Name              Suite No.

        _____
        City              State              Zip Code

INFORMATION REGARDING LAST MEDICAL CONSULATION

**LIFE ONE**

21. a) Date of last visit to ANY doctor/physician

b) Reason for visit    annual check up

c) Diagnosis or outcome of visit

d) Treatment/medication    none prescribed

e) Name of doctor/physician for above (check one)
☑ Primary doctor/physician
☑ Other doctor/physician (provide name and address)

REDACTED REDACTED

REDACTED

Last

Suite No.

City

**LIFE TWO**

22. a) Date of last visit to ANY doctor/physician    month    day    year

b) Reason for visit

c) Diagnosis or outcome of visit

d) Treatment/medication prescribed

e) Name of doctor/physician for above (check one)
☐ Primary doctor/physician
☐ Other doctor/physician (provide name and address)

First    Middle    Last

Street No. & Name    Suite No.

State    Zip Code

|  | Life One | Life Two |
|---|---|---|
| 23. Has a **John Hancock Medical Exam NB5033** been completed or will it be completed? If 'No', complete question 24 and Medical Certification below. | ☑ Yes ☐ No | ☐ Yes ☐ No |
| 24. Have you ever used tobacco or nicotine products in any form (including cigarettes, cigars, cigarillos, a pipe, chewing tobacco, nicotine patches or gum)? If 'Yes', give details below. | ☐ Yes ☑ No | ☐ Yes ☐ No |

Life One:

|  |  | | Date Last Used |
|---|---|---|---|
| Product | Frequency | Current Past | month day year |
| Cigarettes | pack(s)/day | ☐ ☐ |  |
| Cigars | x /day | ☐ ☐ |  |
| Other: | x /day | ☐ ☐ |  |

Life Two:

|  |  | | Date Last Used |
|---|---|---|---|
| Product | Frequency | Current Past | month day year |
| Cigarettes | pack(s)/day | ☐ ☐ |  |
| Cigars | x /day | ☐ ☐ |  |
| Other: | x /day | ☐ ☐ |  |

## MEDICAL CERTIFICATION

Complete this section when submitting a medical examination form of another company in lieu of John Hancock Medical Exam NB5033.

25. 

| Name of Proposed Life Insured | Name of Insurance Company | Date of Examination |
|---|---|---|
|  |  | month day year |
| 1. |  |  |
| 2. |  |  |

|  | Life One | Life Two |
|---|---|---|
| a) To the best of your knowledge and belief, is the information in the examination true and complete as of the date this application is signed? | ☐ Yes ☐ No | ☐ Yes ☐ No |

## COVERAGE APPLIED FOR

26. Complete the applicable **Coverage Details Form NB5007** (Universal Life), **NB5008** (Variable Life) or **NB5013** (Term & Traditional Life) for details of the policy being applied for, including Supplementary Benefits and other benefit options.

## SPECIAL REQUESTS – Attach additional page if more space is required.

TEMPORARY LIFE INSURANCE AGREEMENT APPLICATION

Money may NOT be collected and the **Temporary Life Insurance Receipt and Agreement NB5004** may NOT be issued if:
1. questions 28 and 29 are answered Yes or left blank; or
2. the Proposed Life Insured(s) is under age 20 or over age 70; or
3. the amount applied for is more than $10,000,000 (single life) or $15,000,000 (survivorship).

27. Is coverage being applied for under the Temporary Life Insurance Agreement?  ☐ Yes  ☑ No
    If 'Yes', answer questions 28 and 29.

28. Within the last 24 months, has the Proposed Life Insured(s) under this application:

|  | Life One | Life Two |
|---|---|---|
| a) consulted a medical professional, been diagnosed with or been treated for or had treatment recommended by a member of the medical profession for any heart problem, stroke or cancer? | | ☐ Yes ☐ No |
| b) consulted with or scheduled a consultation with a medical professional for any symptoms or medical concerns? | | ☐ Yes ☐ No |
| c) received a recommendation from a medical professional for any consultation, testing, investigation or surgery that has not yet been completed? | | ☐ Yes ☐ No |
| d) been declined for life insurance? | | ☐ Yes ☐ No |
| 29. Does the Proposed Life Insured(s) reside outside the United States more than 6 months per year? | | ☐ Yes ☐ No |

*REDACTED*

## PRE-AUTHORIZED PAYMENT PLAN

**Attach voided sample check.**

30. Request for Pre-Authorized Payment Plan

| Policy Number(s) | Name(s) of Person(s) Insured | First Bank Withdrawal Effective | | | Type of Payment and Amount | |
|---|---|---|---|---|---|---|
| | | month | day | year | Premium | Loan |

By completing this section, I hereby authorize and request The Company to draw checks (which may include withdrawals made electronically) monthly on my account to pay premiums, and/or repay loans on the policies listed above or any policies subsequently designated.

I understand and agree that:
a) Such checks (which may include withdrawals made electronically) shall be drawn monthly to pay premiums falling due on the designated policies.
b) While the Pre-Authorized Payment Plan is in effect, The Company will not give notices of premiums falling due on such policies.
c) The Pre-Authorized Payment Plan may be terminated by the bank depositor or by written notice to The Company by the Owner. If the Pre-Authorized Payment Plan is terminated, premiums falling due thereafter shall be payable directly to The Company as provided in the policy.
d) The first premium paid must be submitted by check.

## DECLARATIONS

The Proposed Life Insured(s) and Owner (or Parent or Guardian) declare that the statements and answers in this application and any form that is made part of this application are complete and true.

In addition, I/we understand and agree that:
1. The statements and the answers in this application, which include coverage details and any supplemental form relating to health, aviation practices or lifestyle of the Proposed Life Insured(s), will become part of the insurance policy issued as a result of this application.
2. a) Any life insurance policy issued as a result of this application will be effective on the later of the date the first premium has been paid in full and the date the policy has been delivered, provided that since the date of the application there has been no deterioration in the insurability of the Proposed Life Insured(s), no changes in the lifestyle of the Proposed Life Insured(s), no change in the financial circumstances of the Owner, and nothing has occurred that would require a change to any statement or answer in any part of this application in order to make the statement or answer true and complete as of the date the policy becomes effective. If there has been a deterioration in insurability: i) if there is no Temporary Life Insurance Agreement (TIA) coverage, the policy will not be put into effect, and ii) if there is TIA coverage and the TIA has not ended, the policy will be put into effect but only to the limit of the TIA coverage amount.
   b) If premiums are paid prior to delivery of the policy and the terms and conditions of the TIA are satisfied, insurance prior to the effective date shall be provided only under the TIA and according to its terms.
3. Any person who knowingly and with intent to defraud any insurer:
   a) files an application for insurance or statement of claim containing any materially false information, or b) conceals for the purpose of misleading any insurer, information concerning any material fact thereto, may be committing a fraudulent insurance act.
4. If coverage under a TIA is applied for, I/we have received, read and understand the terms and conditions of the **Temporary Life Insurance Receipt and Agreement NB5004.**

## OWNER/TAXPAYER CERTIFICATION QUESTIONS

**U.S. Person(s) (including U.S. Resident/Alien(s))**

Under the penalties of perjury, I the Owner, certify that:

1. The number shown on Page 1 of the application is my correct taxpayer identification number (if number has not been issued, write "Applied for" in the box on Page 1), AND

2. Pick the applicable box:

☑ I am not subject to Backup Tax Withholding because (a) I am exempt from Backup Tax Withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to Backup Tax Withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to Backup Tax Withholding, OR

☐ The Internal Revenue Service (IRS) has notified me that I am subject to Backup Tax Withholding.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid Backup Tax Withholding.

**Non U.S. Person(s) and Non Resident Alien(s)**

I am providing IRS Form W-8BEN. ☐ Yes ☐ No

## AUTHORIZATION TO OBTAIN INFORMATION

I/We, the Proposed Life Insured(s), authorize:

1. The Company to obtain an investigative consumer report on me/us.

2. Any medical professional, medical care provider, hospital, clinic, laboratory, insurance company, the Medical Information Bureau (MIB Inc.) to give The Company and its reinsurers information about me/us or any minor child/children who is/are to be insured.

The information collected by The Company may relate to the symptoms, examination, diagnosis, treatment or prognosis of any physical or mental condition.

I/We further authorize The Company to disclose such information and any information developed during its evaluation of this application to:

(a) its reinsurers; (b) the MIB Inc.; (c) other insurance companies as designated by me/us; (d) me/us; (e) my/our insurance agent, when that agent is seeking insurance coverage through The Company on my/our behalf; or (f) any medical professional designated by me/us.

I/We acknowledge receipt of the Notice of Disclosure of Information relating to the underwriting process, investigative consumer reports and the MIB Inc.

This authorization will be valid for two years from the date of the application shown below. A photocopy of this authorization will be as valid as the original.

Information collected under this authorization will be used by The Company to evaluate my/our application for insurance, to evaluate a claim for benefits, or for reinsurance or other insurance purposes.

I am/We are entitled, or my/our authorized representative is entitled, to a copy of this authorization.

## SIGNATURES

Please read all of the above Declarations and Authorizations before signing this form.

If Proposed Life Insured(s) is under age 15 Parent or Guardian must sign and include relationship.

| Signed at | City | State | This | Day of | Year |
|---|---|---|---|---|---|
| | Laguna Woods | Ca | April | 13th | 2010 |

Signature of Owner (Signing Officer please provide title or corporate seal)

X _Irene S. Bates_

Signature of Proposed Life Insured One if other than Owner (Parent or Guardian if under age 15)

X

Signature of Proposed Life Insured Two if other than Owner

X

**Agent signature**

Signature of Agent/Registered Representative

X

| | Signed this | Day of | Year |
|---|---|---|---|

# EXHIBIT

# #2



**the future is yours**

Service Office:
Life New Business
197 Clarendon Street
Boston MA 02116-5010

**Agent Report**
**John Hancock Life Insurance Company (U.S.A.)**
(hereinafter referred to as The Company)

Complete and submit with Application for Life Insurance. Print and use black ink.

## PROPOSED LIFE INSURED(S)

**LIFE ONE**
1. Name _Irene  S  Bates_
   First    Middle    Last

**LIFE TWO**
2. Name _____
   First    Middle    Last

## AGENT QUESTIONS

To be completed by the Agent/Registered Representative.

3. a) Total Premium Collected: $ —o—   b) Has a Temporary Life Insurance Agreement been issued? ☐ Yes ☐ No

4. a) Question No. 8 of the application asks if there is, or if the applicant is considering entering into, an understanding or agreement providing for any person or entity, other than the Owner and beneficiaries specified in the application, to have any right, title or other legal or beneficial interest in any policy issued on the life of the Proposed Life Insured(s) as a result of the application. Examples of such an understanding or agreement include, but are not limited to, arrangements where the proposed Owner has or will have an option to sell to a third party the Owner's interest in the policy, or where a third party has or will have an option to buy the proposed Owner's interest in the policy. With this understanding, has Question No. 8 been answered appropriately?
   ☒Yes  ☐ No - give details

   b) Will any policy issued on the life of the Proposed Life Insured(s) as a result of this application, replace a policy that has been sold, assigned or settled to or with a settlement or viatical company or any other person or entity? ☐ Yes ☒ No

   c) Will the premiums, now or in the future, be funded by a loan or other means from someone other than the Insured or the Insured's employer? ☒ No   ☐ Yes - give details of the funding arrangement. If applicable, describe the name of the lender, interest rate, term of loan, other fees, charges or other consideration to be paid on maturity of loan and required amount and type of collateral.

5. Will any entity other than a life insurance company be medically evaluating the Proposed Life Insured(s) to determine life expectancy or to otherwise obtain financing? ☒ No   ☐ Yes - give details

6. a) Will this insurance replace existing policies or is the owner considering using funds from existing policies to pay premiums due on the new policy or contract? ☐ Yes   ☒ No  If Yes, the Agent/Registered Representative is required to present and read **IMPORTANT NOTICE: Replacement of Life Insurance or Annuities (Standard Form), NB5017** to the Owner. The completed form must be submitted with the Application.

   b) If Accident and Sickness or Long Term Care is being replaced, please give the Proposed Life Insured the **Notice for Replacement of Individual Accident and Sickness or Long-term Care Insurance, NB5019.**

   c) List any other health insurance policies   Health policies in force   Health policies sold in the past 5 years and no longer in force you have sold to the applicant.

7. a) Did you see each Proposed Life Insured when the application was completed? ☒Yes   ☐ No - If 'No', answer question 7 b).

   b) Please describe how the application was solicited and completed.

8. a) Will this policy be owned by the employer of the Proposed Life Insured(s)? ☐ Yes ☒ No - If 'Yes', answer questions 8 b) & 8 c).

   b) The Proposed Life Insured(s) has received written notice, which: (i) indicates that the employer intends to insure the employee's life; (ii) specifies the maximum face amount for which the employee could be insured at the time the policy is issued; and (iii) informs the insured that the employer will be the beneficiary of the policy. ☐ Yes ☐ No

   c) The Proposed Life Insured(s) has provided written consent to being insured and that such coverage may continue after the employment relationship terminates. ☐ Yes ☐ No

9. Agent Information

| Name of Agent/Entity | Agent Code | Social Security No. | Telephone No. | E-mail Address | % Share |
|---|---|---|---|---|---|
| Clive Taylor | 703552 | 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 | 281-269-2342 | Daily@3mark.com | 100 |

Name of Broker Dealer (if applicable)   3 Mark Financial

Total must equal   100%

NB5075US (01/2009)   Page 1 of 2   RPLCNMNT-STANDARD REF   VERSION (01/2009)

**CERTIFICATION AND SIGNATURE**

Agent/
Registered
Representative
for this policy
must sign this
form.

I declare that I have asked the Proposed Life Insured(s) and/or the Owner each question on the application. The answers have been recorded by me exactly as stated and I know of nothing affecting the insurability of the Proposed Life Insured(s) which is not fully recorded in this application.

I certify that the state approved Buyer's Guide has been given to the Owner at time of application and that no sales material other than that approved by The Company has been used.

Signed at       City                State                This       Day of                                Year

_Corona,        Ca_                          _27th   January_                         _2010_

Signature of Agent/Registered Representative

X

NB5075US (01/2009)                              Page 2 of 2                    RPLCNMNT-STANDARD REF          VERSION (01/2009)

# EXHIBIT

# #3

*John Hancock*

Life Insurance Company (U.S.A.)
A Stock Company

| | |
|---|---|
| **LIFE INSURED** | **IRENE S BATES** |
| **POLICY NUMBER** | 94 818 952 |
| **PLAN NAME** | Performance UL |

**FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY**
ADJUSTABLE DEATH BENEFIT
BENEFIT PAYABLE ON LIFE INSURED'S DEATH
FLEXIBLE PREMIUMS PAYABLE TO AGE 121 DURING THE LIFE INSURED'S LIFETIME
NON-PARTICIPATING (NOT ELIGIBLE FOR DIVIDENDS)

Subject to the conditions and provisions of this policy, if the Life Insured dies while the policy is in force, the John Hancock Life Insurance Company (U.S.A.) ("the Company") agrees to pay the Insurance Benefit to the Beneficiary in a lump sum, and to provide the other benefits, rights, and privileges, if any, of the policy. The Insurance Benefit is described in Section 6. If the Company makes other plans of payment available other than a lump sum, then a Beneficiary may request written election of any such other plans in lieu of a lump sum.

## IMPORTANT NOTICE

**READ YOUR POLICY CAREFULLY. It is a contract between you and us.**
**If for any reason you are not satisfied with your policy, you may return it for cancellation by delivering or mailing it to us or to the agent who sold it. If this policy does not replace another policy, you may return it within TEN days after receiving it, or if it replaces another policy, you may return it within THIRTY days after receiving it. We will refund in full the payment made. The policy will be void from the beginning.**

Signed for the Company by:

_____
President

_____
Secretary

09PERFUL                                                                          PU0109ACA

## IMPORTANT NOTICE SENIORS 60+ ONLY

YOU HAVE PURCHASED A LIFE INSURANCE CONTRACT.  CAREFULLY REVIEW IT FOR LIMITATIONS.

THIS POLICY MAY BE RETURNED WITHIN 30 DAYS FROM THE DATE YOU RECEIVED IT FOR A FULL REFUND BY RETURNING IT TO THE INSURANCE COMPANY OR THE AGENT WHO SOLD YOU THIS POLICY.  AFTER THIRTY DAYS, CANCELLATION MAY RESULT IN A SUBSTANTIAL PENALTY, KNOWN AS A SURRENDER CHARGE.

THE SURRENDER CHARGE CAN BE FOUND IN SECTION 1, PAGE 3A AND SECTION 17, PAGE 15 OF YOUR POLICY.

09PERFUL                                                      SENIOR DISCLOSURE

**Policy Provisions**

**Section**

1.  Policy Specifications
2.  Table of Rates
3.  Definitions
4.  Qualification as Life Insurance
5.  Total Face Amount
6.  Insurance Benefit
7.  Interest on Proceeds
8.  Premiums
9.  No-Lapse Guarantee
10. Grace Period
11. Policy Termination
12. Reinstatement
13. Coverage at and after Age 121
14. Policy Value
15. Loan Account and Guaranteed Interest Account
16. Loans
17. Surrenders and Withdrawals
18. Owner and Beneficiary
19. Assignment
20. Misstatements
21. Suicide
22. Incontestability
23. The Contract
24. Right to Postpone Payment of Benefits
25. Claims of Creditors
26. Reports to Owner
27. How Values are Computed

2

## 1. POLICY SPECIFICATIONS

| | | | |
|---|---|---|---|
| **Life Insured** | IRENE S BATES | **Plan Name** | Performance UL |
| **Age at Policy Date** | 77 | **Policy Number** | 94 818 952 |
| **Sex** | Female | **Issue Date** | March 10, 2010 |
| **Risk Classification** | Standard Non Smoker | **Policy Date** | April 16, 2010 |
| **Additional Ratings** | Not Applicable | | |

**Owner, Beneficiary**   As designated in the application or subsequently changed

**Death Benefit Option at Issue**   Option 1

**Life Insurance Qualification Test Elected**   Cash Value Accumulation Test

| | |
|---|---|
| Base Face Amount at Issue | $1,000,000.00 |
| Supplemental Face Amount at Issue | $0.00 |
| Total Face Amount at Issue | $1,000,000.00 |

**Governing Law**   California

### PREMIUMS AT ISSUE

**Premium Mode**   Annual

**Planned Premium**   $44,781.58 per policy year

**Minimum Initial Premium**   $3,491.66

**No-Lapse Guarantee Premium**   $41,900.01 per year

**Notice:**  This policy provides life insurance coverage for the lifetime of the Life Insured if sufficient premiums are paid.  Premium payments in addition to the Planned Premium shown may need to be made to keep this policy and coverage in force.  Keeping the policy and coverage in force will be affected by factors such as:  changes in the current Cost of Insurance rates and Base Face Amount Charge; the amount, timing and frequency of premium payments; the interest rate being credited to the Guaranteed Interest Account; changes to the Death Benefit Option; changes in the Total Face Amount; loan activity; withdrawals; and deductions for any applicable Supplementary Benefit riders that are attached to, and made a part of, this policy.  Also refer to the Grace Period and Policy Termination provisions in Sections 10 and 11.

3.0

PU0309A

**1. POLICY SPECIFICATIONS** (continued) - Policy 94 818 952

### OTHER BENEFITS AND SPECIFICATIONS

Not Applicable

3 (continued)

PU03109A

---

**1. POLICY SPECIFICATIONS** (continued) - Policy 94 818 952

---

### MAXIMUM EXPENSE CHARGES

**Deductions from Premium Payments**

    **Premium Charge**    8% of each premium paid

**Monthly Deductions:** The following charges are deducted monthly from the Policy Value:

| Administrative Charge | Policy Years | Dollar amount |
|---|---|---|
| | 1 | $25.00 |
| | 2+ | $10.00 |

**Base Face Amount Charge**    $0.5231 per $1000 of Base Face Amount for the first 10 Policy Years.

**Cost of Insurance Charge**    Determined in accordance with Section 14.  Maximum Monthly Rates per $1,000 are shown in Section 2.

**Other Charges**

    **Surrender Charge**    Charge deducted from the Policy Value during the Surrender Charge Period. See Sections 5 and 17 for details of when a Surrender Charge applies.

The Surrender Charge for the Base Face Amount at Issue is $26,328.94.

The Surrender Charge will reduce monthly over the Surrender Charge Period until it becomes zero.  The table below shows the applicable grading percentage at the beginning of each Policy Year during the Surrender Charge Period (proportionate grading percentages apply for other Policy Months).  The amount to which the Surrender Charge is reduced at any time is determined by multiplying the initial amount of Surrender Charge by the percentage that is applicable at that interval during the Surrender Charge Period.

| Surrender Charge Period (Policy Year) | Maximum Percentage of Surrender Charge | Surrender Charge Period (Policy Year) | Maximum Percentage of Surrender Charge |
|---|---|---|---|
| 1 | 100.00% | 9 | 87.50% |
| 2 | 100.00% | 10 | 75.00% |
| 3 | 100.00% | 11 | 62.50% |
| 4 | 100.00% | 12 | 50.00% |
| 5 | 100.00% | 13 | 37.50% |
| 6 | 100.00% | 14 | 25.00% |
| 7 | 100.00% | 15 | 25.00% |
| 8 | 87.50% | 16 | 0.00% |

**Supplementary Benefit Rider Charges**    Charges for applicable riders are shown under Supplementary Benefits of this Section 1.

3A

PU03A09A

**1. POLICY SPECIFICATIONS** (continued) - Policy 94 818 952

## <u>TABLE OF VALUES</u>

**Refer to your policy provisions for details on the terms and values shown in this table.**

| | |
|---|---|
| Minimum Total Face Amount | $ 100,000 |
| Minimum Base Face Amount | $ 100,000 |
| Minimum Total Face Amount Decrease | $  50,000 |
| No-Lapse Guarantee Period | |
|     Base Face Amount | First 10 Policy Years from Policy Date |
|     Supplemental Face Amount (if elected) | First 2 Policy Years from Policy Date |
| Guaranteed Interest Account Annual Rate | Not less than 3% |
| Loan Interest Rate | As defined in Section 16 |
| Maximum Loan Interest Credited Differential | |
|     Policy Years 1-10 | 1.25% |
|     Policy Years   11+ | .25% |
| Minimum Loan Amount | $500 |
| Minimum Withdrawal Amount | $500 |
| Death Benefit Discount Factor | 1.0024663 |
| Partial Surrender Charge Decrease Exemption | 10% |

3B

PU03B09A

## 2. TABLE OF RATES - Policy 94 818 952

### A. RATE TABLE

| Age | Maximum Monthly Rates per $1,000 of Net Amount at Risk | Minimum Death Benefit Factors | Age | Maximum Monthly Rates per $1,000 of Net Amount at Risk | Minimum Death Benefit Factors |
|---|---|---|---|---|---|
| 77 | 2.7134 | 1.5362 | | | |
| 78 | 2.9843 | 1.5022 | | | |
| 79 | 3.2776 | 1.4697 | | | |
| 80 | 3.6065 | 1.4385 | | | |
| 81 | 4.0550 | 1.4087 | | | |
| 82 | 4.5636 | 1.3807 | | | |
| 83 | 5.0733 | 1.3545 | | | |
| 84 | 5.6400 | 1.3297 | | | |
| 85 | 6.2826 | 1.3063 | | | |
| 86 | 6.8695 | 1.2842 | | | |
| 87 | 7.7603 | 1.2628 | | | |
| 88 | 8.7003 | 1.2431 | | | |
| 89 | 9.7133 | 1.2247 | | | |
| 90 | 10.6571 | 1.2076 | | | |
| 91 | 11.1384 | 1.1910 | | | |
| 92 | 12.0927 | 1.1733 | | | |
| 93 | 13.5274 | 1.1552 | | | |
| 94 | 15.3719 | 1.1374 | | | |
| 95 | 17.7024 | 1.1197 | | | |
| 96 | 19.9736 | 1.1022 | | | |
| 97 | 22.3736 | 1.0836 | | | |
| 98 | 22.7915 | 1.0623 | | | |
| 99 | 24.2041 | 1.0350 | | | |
| 100 | 26.4942 | 1.0000 | | | |
| 101 | 29.0028 | 1.0000 | | | |
| 102 | 31.8878 | 1.0000 | | | |
| 103 | 35.1432 | 1.0000 | | | |
| 104 | 38.8726 | 1.0000 | | | |
| 105 | 43.0924 | 1.0000 | | | |
| 106 | 47.6414 | 1.0000 | | | |
| 107 | 52.5635 | 1.0000 | | | |
| 108 | 57.8160 | 1.0000 | | | |
| 109 | 63.6520 | 1.0000 | | | |
| 110 | 70.0659 | 1.0000 | | | |
| 111 | 76.7256 | 1.0000 | | | |
| 112 | 83.3333 | 1.0000 | | | |
| 113 | 83.3333 | 1.0000 | | | |
| 114 | 83.3333 | 1.0000 | | | |
| 115 | 83.3333 | 1.0000 | | | |
| 116 | 83.3333 | 1.0000 | | | |
| 117 | 83.3333 | 1.0000 | | | |
| 118 | 83.3333 | 1.0000 | | | |
| 119 | 83.3333 | 1.0000 | | | |
| 120 | 83.3333 | 1.0000 | | | |
| 121 | 0.0000 | 1.0000 | | | |

For attained Age 121 and above, the Maximum Monthly Rate per $1,000 of Net Amount of Risk is 0 and the Minimum Death Benefit Factor is 1.0000.

Maximum Monthly Rates are the same for the Base Face Amount and the Supplemental Face Amount and have been adjusted for any applicable Additional Ratings that are applied to the Cost of Insurance rates as shown in Section 1.

4                                                                                              PU0409A

## 3. DEFINITIONS

The term **"Additional Rating"** is an increase in the Cost of Insurance that is applied when a Life Insured does not meet, at a minimum, our underwriting requirements for the standard Risk Classification.

The term **"Age"** means, on any Policy Anniversary, the age of the person in question at his or her birthday nearest that date.

The term **"Annual Processing Date"** means every 12th Processing Date starting with the Processing Date next after the Policy Date.

The term **"Business Day"** means any pre-scheduled work day that we are open for business. We will deem each Business Day to end at the close of regularly scheduled Company hours (currently 4:00 p.m. Eastern time) on that day.

The term **"Cash Surrender Value"** equals the Policy Value less the Surrender Charge.

The term **"date"** means a calendar day ending at midnight local time at our Service Office.

The term **"Guaranteed Interest Account"** is that part of the Policy Value which reflects the value you have in our general account.

The term **"in force"** means that the policy has not terminated in accordance with Sections 9, 10, or 11, or surrendered in accordance with Section 17.

The term **"Issue Date"** is the date shown in Section 1 of this policy from which the Suicide and Incontestability provisions are applied.

The term **"Loan Account"** is that part of the Policy Value which reflects amounts transferred from the Guaranteed Interest Account as collateral for a policy loan.

The term **"Minimum Initial Premium"** means the minimum premium needed to put the policy in force and is shown in Section 1.

The term **"Net Cash Surrender Value"** equals the Cash Surrender Value less the Policy Debt.

The term **"Net Policy Value"** equals the Policy Value less the value in the Loan Account.

The term **"Net Premium"** is the gross premium paid less any Premium Charge.

The term **"Partial Surrender Charge Decrease Exemption"** is the percentage of the Base Face Amount at Issue as shown in Section 1 in the Table of Values. This percentage is set at issue of the policy. This exemption applies to cumulative decreases in the Base Face Amount of insurance. Once cumulative decreases exceed this exemption, applicable Surrender Charges will apply. The exemption is not applicable to a full surrender of the policy or Net Cash Surrender Value withdrawals.

The term **"Planned Premium"** means the premium that is selected in the application for the policy, which is intended to be paid on a regular modal basis. It is shown in Section 1.

The term **"Policy Date"** is the date from which charges for the first Monthly Deduction are calculated. The Policy Date is shown in Section 1. Policy Years, Policy Months, and Policy Anniversaries are determined from the Policy Date.

The term **"Policy Debt"** as of any date equals (a) plus (b) plus (c), minus (d), where:

(a)   is the total amount of loans borrowed as of such date;

(b)   is the total amount of any unpaid loan interest charges borrowed against the policy on a Policy Anniversary;

(c)   is any interest charges accrued from the last Policy Anniversary to the current date; and

(d)   is the total amount of loan repayments as of such date.

The term **"Policy Value"** is the sum of the values in the Loan Account and the Guaranteed Interest Account.

5

PU0509A

## 3. DEFINITIONS (continued)

The term "**Policy Year**" means (a) or (b) below whichever is applicable.

   (a)   The first Policy Year is the period beginning on the Policy Date and ending on the Business Day immediately preceding the first Annual Processing Date.

   (b)   Each subsequent Policy Year is the period beginning on an Annual Processing Date and ending on the Business Day immediately preceding the next Annual Processing Date.

The term "**Processing Date**" means the first day of a Policy Month. A Policy Month shall begin on the day in each calendar month that corresponds to the day of the calendar month on which the Policy Date occurred. The Policy Date is not a Processing Date.

The term "**Service Office**" is the office that we designate to service this policy as shown on the back cover of your policy.

The term "**Surrender Charge Period**" is the period during which we will assess surrender charges beginning on the Policy Date and ending when the surrender charge is equal to zero. Surrender charges will apply during this period if you surrender the policy, request a decrease in the Base Face Amount which exceeds the Partial Surrender Charge Decrease Exemption, make a withdrawal that reduces the Base Face Amount, or if the policy terminates due to default. The Surrender Charge Period is shown in Section 1.

The term "**Surrender Date**" means the end of the Business Day on which we receive at our Service Office your written request for full surrender of the policy.

The terms "**we**", "**us**", and "**our**" refer only to the Company.

The term "**written request**" is your request to us which must be in a form satisfactory to us, signed and dated by you, and filed at our Service Office or, if permitted by our administrative practices, an electronic mail message ("e-mail") received by us at the internet address specified by us for receipt of such messages.

The terms "**you**" and "**your**" refer only to the Owner of this policy.

## 4. QUALIFICATION AS LIFE INSURANCE

It is intended that this policy comply with Section 7702 of the Internal Revenue Code, or any other equivalent section of the Code, so that, notwithstanding any other provisions of the policy to the contrary, it will be considered as life insurance for federal income tax purposes. We reserve the right to make any reasonable adjustments to the terms or conditions of this policy if it becomes necessary to allow it to qualify as life insurance. This provision should not be construed to guarantee that this policy will receive tax treatment as life insurance or that the tax treatment of life insurance will never be changed by the future actions of any tax authority. One of the following tax qualification tests will apply to the policy. The test you elected is shown in Section 1. Your election cannot be changed after issue.

**Guideline Premium Test**
Under this test, if at any time the premiums received under the policy exceed the amount allowable for such tax qualification, such excess amount shall be removed from the policy as of the date of its payment, together with interest thereon from such date, and any appropriate adjustment in the Death Benefit shall be made as of such date. This excess amount shall be refunded to you no later than 60 days after the end of the applicable Policy Year. If this excess amount is not refunded by then, the Total Face Amount under the policy shall be increased retroactively so that at no time is the Death Benefit ever less than the amount necessary to ensure or maintain such tax qualification. In no event, however, will we refuse to accept any premium necessary to prevent the policy from terminating but only if such premium payment would result in a zero Policy Value at the end of the Policy Year. In addition, the Minimum Death Benefit, as described in Section 6, must be maintained.

**Cash Value Accumulation Test**
Under this test, the Minimum Death Benefit, as described in section 6, must be maintained.

**Effect on Life Insurance Qualification Tests**
A change in Death Benefit Option or Total Face Amount, or certain other policy changes, will often change the policy's limits under the Life Insurance Qualification Test that you elected.

We reserve the right to refuse or limit any request for a change if the change would cause the policy to fail to qualify as life insurance for tax purposes.

6

## 5. TOTAL FACE AMOUNT

The Total Face Amount is made up of two components: (i) the Base Face Amount, and (ii) any Supplemental Face Amount. Minimum Base Face Amount and the Minimum Total Face Amount limits are shown in Section 1. You may not increase your Total Face Amount of insurance under this policy, except as described in Section 6, where a change is made from Death Benefit Option 2 to Option 1.

**Reduction of Total Face Amount**

You may request a reduction in Total Face Amount any time after the first Policy Year while this policy is in force. The Minimum Total Face Amount Decrease is shown in Section 1. Any reduction in the Total Face Amount will generally be implemented by first reducing any Supplemental Face Amount. We reserve the right to allow a reduction in Base Face Amount first. If there is a reduction in Base Face Amount, a charge may be deducted from the Policy Value. This charge will be equal to a proportionate part of the Surrender Charge that would have applied if the policy had been surrendered on the date the reduction in Base Face Amount takes effect. The proportion will be equal to the amount of the reduction in Base Face Amount which exceeds the Partial Surrender Charge Decrease Exemption divided by the amount of Base Face Amount in effect immediately before the reduction, less any applicable Partial Surrender Charge Decrease Exemption. This charge will also apply if a withdrawal, as described in Section 17, results in a reduction in Base Face Amount. Without our prior approval, the Base Face Amount cannot be reduced below the minimum as shown in Section 1. Any reduction in Supplemental Face Amount or Base Face Amount will be effective on the next Processing Date after our approval.

## 6. INSURANCE BENEFIT

If the Life Insured dies while the policy is in force, we will pay the Insurance Benefit upon receipt of due proof of death of the Life Insured, subject to any applicable provisions of the policy. If the Life Insured dies on or after the date we receive a written request from you to surrender the policy, no Insurance Benefit will be paid. We will pay the amount payable under the Surrenders and Withdrawals provision instead.

**Insurance Benefit**

The Insurance Benefit payable is:

(a)  the Death Benefit as described below; plus

(b)  any amounts payable under any Supplementary Benefit riders as a result of the Life Insured's death that form part of the policy; less

(c)  any outstanding Policy Debt at the date of death.

If the Life Insured dies during a grace period, the Policy Value used in the calculation of the Death Benefit will be the Policy Value as of the date of death of the Life Insured, and the Insurance Benefit will be reduced by any outstanding Monthly Deductions due.

**Death Benefit**

The Death Benefit will depend on whether Option 1 or Option 2 is in effect on the date of the Life Insured's death.

**Death Benefit Options**

Under Option 1, the Death Benefit is equal to the Total Face Amount at the date of death of the Life Insured. Under Option 2, the Death Benefit is equal to the Total Face Amount at the date of death of the Life Insured plus the Policy Value at the date of death of the Life Insured.

The Death Benefit after the Life Insured's Attained Age 121 will be as described in Section 13.

If any withdrawals are made, the Death Benefit, whether Option 1 or Option 2 is in effect, will be less than it would have been if no withdrawals were made. Withdrawals reduce the Death Benefit by reducing:

(a)  the Total Face Amount if Option 1 is in effect, as specified in Section 17; or

(b)  the Policy Value if Option 2 is in effect.

7

PU0709A

## 6. INSURANCE BENEFIT (continued)

**Change of Death Benefit Options**

You may request in writing to change your Death Benefit Option from Option 2 to Option 1 at any time after the first Policy Year while the policy is in force. The change will be effective on the next Processing Date following the date we approve the request, and the Total Face Amount after the change will be equal to the Total Face Amount immediately before the change plus the Policy Value as of the effective date of the change. You may not change your Death Benefit Option from Option 1 to Option 2.

**Minimum Death Benefit**

The sum of the Death Benefit as described above and the benefit payable upon the death of the Life Insured under any Supplementary Benefit riders will never be less than the Minimum Death Benefit. The Minimum Death Benefit is equal to the Minimum Death Benefit Factor for the Age of the Life Insured multiplied by the greater of the Policy Value or the Cash Surrender Value as defined in Section 7702 of the Internal Revenue Code, or any other equivalent section of the Code, on the date of death of the Life Insured. The Minimum Death Benefit Factors are shown in Section 2. However, at no time will the Minimum Death Benefit be less than the amount required to maintain qualification of this policy as a life insurance contract for federal income tax purposes. If you elect the Cash Value Accumulation Test as the Life Insurance Qualification Test, we reserve the right to modify the Minimum Death Benefit Factors shown in Section 2, retroactively if necessary, to maintain qualification of this policy as a life insurance contract for federal income tax purposes, notwithstanding any other provisions of this policy to the contrary.

To the extent that the Net Amount at Risk associated with the Minimum Death Benefit that results from this calculation exceeds our guidelines and limitations that may be in effect, we reserve the right to:

(a)   distribute to you a portion of the Policy Value such that the Net Amount at Risk associated with the resulting Minimum Death Benefit does not exceed our guidelines and limitations in effect; or

(b)   if we should decide to accept the additional Death Benefit, it will be subject to our normal underwriting practices including evidence of insurability.

## 7. INTEREST ON PROCEEDS

We will pay interest on Insurance Benefit proceeds as stipulated by the state. If the state does not specify the interest rate, we will use the rate for insurance benefits left on deposit with us.

## 8. PREMIUMS

The Minimum Initial Premium is shown in Section 1. No insurance will take effect under this policy until our underwriters approve issuance of this policy and the conditions specified in the application form have been satisfied, including receipt of at least the Minimum Initial Premium at our Service Office.

Subsequent premiums can be paid at any time at our Service Office, and in any amount subject to the limits described below. On request, we will give you a receipt signed by one of our officers.

If coverage under the policy takes effect in accordance with the provisions of the application, we will process any premium payment as of the end of the Business Day the payment is received at our Service Office, subject to the limitations of the life insurance qualification test elected by you and to our maximum limits then in effect, unless one of the following exceptions applies.

(a)   We will process a payment received prior to the Policy Date as if received on the Policy Date.

(b)   We will process the portion of any premium payment for which we require evidence of the Life Insured's continued insurability on the first Business Day after we have received such evidence and found it satisfactory to us.

(c)   If our receipt of any premium payment (or portion thereof) would cause the policy not to qualify as a "life insurance contract" under the federal income tax laws, we will not process such payment or portion. However, in the case of certain other tax situations, we will process the payment (or portion thereof) on the first Business Day after we have received satisfactory written instructions from you.

8

## 8. PREMIUMS (continued)

You may pay premiums until the Life Insured reaches Age 121, at which time Monthly Deductions cease and no further premiums may then be paid as described in Section 13.

If any premium payment would result in the Minimum Death Benefit exceeding the Total Face Amount, we reserve the right to either refund the premium or to require additional underwriting, including evidence of insurability for any increase in the Minimum Death Benefit.

**Continuation of Insurance Upon Discontinuance of Premium Payments**

If you discontinue paying premiums, we will continue taking the Monthly Deductions from the Policy Value. Your insurance coverage will continue subject to the No-Lapse Guarantee, Grace Period, and Policy Termination provisions in Sections 9, 10 and 11.

## 9. NO-LAPSE GUARANTEE

Your policy includes a No-Lapse Guarantee. The guarantee periods applicable to the Base Face Amount and to any Supplemental Face Amount are shown in the Table of Values in Section 1. During your No-Lapse Guarantee Period, if the Net Cash Surrender Value falls to zero or below, your policy will not go into default provided it satisfies the Cumulative Premium Test. However, this benefit will not prevent your policy from going into default if the Policy Debt is greater than zero and exceeds the Policy Value.

**Cumulative Premium Test**

The test will be performed on any Processing Date that your policy would otherwise be in default in the absence of the No-Lapse Guarantee. Your policy will satisfy the test if the sum of the premiums received, less any Policy Debt, and less any withdrawals, taken on or before the date of the test, is equal to or greater than the sum of the monthly No-Lapse Guarantee Premiums due from the Policy Date to the date of the test. The test will exclude any period during which the Life Insured was totally disabled if the Total Disability Waiver Of Monthly Deductions Rider is included in the policy. The No-Lapse Guarantee Premium is shown as an annualized amount in the Premiums at Issue in Section 1.

The No-Lapse Guarantee Premium may change if any of the following changes occur under your policy:

(a)     a Supplementary Benefit rider is added, terminated, or changed (including any change in its cost or the expiration thereof);

(b)     the Death Benefit Option is changed;

(c)     there is a change in the Base Face Amount or the Supplemental Face Amount; or

(d)     there is a change in the Life Insured's Risk Classification, or if applicable, Additional Rating.

We will inform you of any change to the No-Lapse Guarantee Premium resulting from any such change. The revised No-Lapse Guarantee Premium will be effective from the date of the change. For the purpose of performing the Cumulative Premium Test, we will use the No-Lapse Guarantee Premium in effect as of the Policy Date up to the date of the change, including any revised premium in effect as of the date of a prior change.

## 10. GRACE PERIOD

**Default**

Subject to the No-Lapse Guarantee feature of the policy, the policy and any Supplementary Benefit riders will go into default if, at the beginning of any Policy Month, the Net Cash Surrender Value is less than or equal to zero after we take the Monthly Deductions that are due for that month.

**Grace Period Duration**

We will allow 61 days from the date the policy goes into default, for you to pay the amount that is required to bring the policy out of default. At least 30 days prior to termination of coverage, we will send notice to your last known address, specifying the amount you must pay to bring the policy out of default. If we have notice of a policy assignment on file at our Service Office, we will also mail a copy of the notice of the amount due to the assignee on record.

PU0909A

## 10. GRACE PERIOD (continued)

**Default Payment**

The amount required to bring the policy out of default, referred to as the Default Payment, is equal to (a) plus (b) plus (c) where:

(a)     is the amount necessary to bring the Net Cash Surrender Value to zero if it is less than zero, at the date of default;

(b)     is an amount equal to 3 times the Monthly Deductions due on the date of default;

(c)     is the applicable Premium Charge.

When payment is received, any expense charges which are past due and unpaid will be immediately deducted from the Net Policy Value. If the Default Payment has not been paid by the end of the grace period, the policy will terminate. Upon termination of the policy, the remaining Net Cash Surrender Value, if any, will be paid to the owner. If the Life Insured dies during the grace period, then we will deduct from the Insurance Benefit proceeds all Monthly Deductions due and unpaid as of the date of the Life Insured's death. No Insurance Benefit under the policy or any Supplementary Benefit riders will be in effect after the policy terminates.

**No-Lapse Guarantee**

If the policy is in the No-Lapse Guarantee Period, and the Cumulative Premium Test has been met, then one of the following will apply.

•     During the first 2 Policy Years, the Base Face Amount, any Supplemental Face Amount, and any Supplementary Benefit riders will remain in effect.

•     For the remainder of the No-Lapse Guarantee Period, if any, (see Section 1 for the duration of the No-Lapse Guarantee Period), the Base Face Amount will remain in effect, but any Supplemental Face Amount and any Supplementary Benefit riders (unless otherwise stated therein) will be subject to termination. The amount required to maintain any Supplemental Face Amount and any applicable Supplementary Benefit riders is equal to the Default Payment specified above. If a payment at least equal to the Default Payment is not received by the end of the grace period, then any Supplemental Face Amount, and any Supplementary Benefit riders (unless otherwise stated therein), will cease to be in effect and will be terminated from the policy.

**Failure to Meet Cumulative Premium Test**

If the policy is in the No-Lapse Guarantee Period, and the Cumulative Premium Test has not been met, then the Base Face Amount, any Supplemental Face Amount, and any Supplementary Benefit riders will go into default, as described above. The Grace Period Duration and Default Payment provisions described above will apply. In lieu of the Default Payment, however, you may pay the shortfall needed to meet the Cumulative Premium Test, in which case one of the following will apply.

•     During the first 2 Policy Years, the Base Face Amount, any Supplemental Face Amount, and any Supplementary Benefit riders will remain in effect.

•     For the remainder of the No-Lapse Guarantee Period, if any, the Base Face Amount will remain in effect, but any Supplemental Face Amount and any Supplementary Benefit riders (unless otherwise stated therein) will terminate as of the end of the Grace Period.

The shortfall will be equal to the amount necessary to satisfy the Cumulative Premium Test as of the date of default, plus the No-Lapse Guarantee Premium for the next three Policy Months.

## 11. POLICY TERMINATION

This policy terminates on the earliest of the following events:

(a)     the end of the grace period for which we have not received the amount necessary to bring the policy out of default;

(b)     surrender of the policy for its Net Cash Surrender Value; or

(c)     the death of the Life Insured.

10

## 12. REINSTATEMENT

If the policy terminates at the end of a grace period in which you did not make a required payment, the policy may be reinstated within 3 years from the date of default. The policy cannot be reinstated if it has been surrendered for its Net Cash Surrender Value.

The requirements for reinstatement are as follows:

    (1)    we must receive written request for reinstatement;

    (2)    reinstatement is subject to our normal underwriting practices, including evidence of insurability for the Life Insured, and for any insureds covered under any Supplementary Benefit rider that you wish to reinstate;

    (3)    we must receive at our Service Office a premium equal to the amount that was required to bring the policy out of default immediately prior to termination, plus the amount needed to keep the policy in force for the next 3 Policy Months.

Requirements (2) and (3) must be satisfied within 60 days after the date we receive written request for reinstatement.

If we approve your request,

    (a)    the reinstatement date will be the date we receive the required payment at our Service Office;

    (b)    the Base Face Amount, and any Supplemental Face Amount will be reinstated to the same amounts as they were on the date the policy terminated;

    (c)    any Surrender Charge will be reinstated to the amount it was at the date of default;

    (d)    the remaining Surrender Charge Period, if any, will be the same as on the date of default;

    (e)    the Policy Value on the date of reinstatement, prior to the crediting of any Net Premium paid on the reinstatement, will be equal to the Policy Value on the date the policy terminated.

## 13. COVERAGE AT AND AFTER AGE 121

Coverage under this policy at and after the Life Insured's Age 121 is subject to the stipulations stated below.

**Death Benefit**
Any Supplemental Face Amount will be terminated, thereby reducing the Death Benefit by such amount. Apart from this change, the Death Benefit will be determined in the same respect as specified in Section 6.

**Premiums and Monthly Deductions**
We will not accept any further premium payments. We will cease to take Monthly Deductions for charges listed in Section 1.

**Credited Interest**
We will continue to credit interest monthly to your Policy Value.

**Policy Debt and Default**
New Loans will be allowed. Loan interest will continue to be charged if there is an outstanding loan. Loan repayments will be accepted. The policy will go into default at any time the Policy Debt exceeds the Policy Value, and Section 10, Grace Period, and Section 16, Loans, will apply.

**Withdrawals**
Withdrawals will not be allowed.

## 14. POLICY VALUE

**Net Premiums Added**
When we receive your premium payments at our Service Office, we deduct a Premium Charge which will not exceed the amount shown in Section 1 and add the balance remaining (the Net Premium) to the Policy Value. We will do this before we take any deductions due on that Business Day. However, we will add any Net Premiums received before the Policy Date to your Policy Value as of the Policy Date.

PU1109A

## 14. POLICY VALUE (continued)

While a loan exists, we will treat the amounts you pay as premiums unless you request in writing that they be treated as loan repayments. If you instruct us in writing to do so, we will first deduct from such payments the amount of accrued interest on loans and then deduct the amount specified as a loan repayment before applying any balance remaining as a premium payment.

**Monthly Deductions**

A deduction is due and will be taken from the Policy Value as of the Policy Date and as of each applicable subsequent Processing Date. Monthly Deductions are calculated from the Policy Date. If, at your request, we set the Policy Date to a date which precedes the date on which we receive the initial premium, Monthly Deductions due for the period prior to receipt of the initial premium will be taken on the later of the date we receive the initial premium and the date our underwriters approve issuance of this policy.

Monthly Deductions are due until the Policy Anniversary on which the Life Insured reaches Age 121 at which time we will cease to take any further Monthly Deductions as described in Section 13.

The Monthly Deduction for any Policy Month that will be deducted from the Policy Value consists of charges (a) through (d) listed below, where:

    (a)    is the Administrative Charge;

    (b)    is the Base Face Amount Charge, if any;

    (c)    is the sum of the charges for riders which are part of the policy, if any, provided such charges are deducted from the Policy Value; and

    (d)    is the Cost of Insurance Charge, as described below.

**Cost of Insurance Charge**

The rates for the Cost of Insurance Charge, as of the Policy Date are based on the Life Insured's Sex (if issued on a sex distinct basis), Age, Risk Classification, Policy Value and duration that the coverage has been in force.

The Cost of Insurance Charge for a specific Policy Month is the charge for the Net Amount at Risk, including any Additional Ratings and any Supplementary Benefit riders which are part of the policy. The charge for the Net Amount at Risk is an amount equal to the per dollar cost of insurance rate for that month multiplied by the Net Amount at Risk. The Cost of Insurance rate will be based on our expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and tax assumptions. The Maximum Monthly Rates at any Age are shown in Section 2 as a rate per $1,000 of Net Amount at Risk. To get the maximum rate per dollar, the rate shown must be divided by 1,000. Each Cost of Insurance Charge is deducted in advance of the applicable insurance coverage for which we are at risk.

The Cost of Insurance calculation will reflect any adjustment for the Minimum Death Benefit.

Periodically, we review our Cost of Insurance rates, and may re-determine Cost of Insurance rates at that time on a basis that does not discriminate unfairly within any class of lives insured. These rates however, will never exceed the Maximum Monthly Rates shown in Section 2.

**Net Amount at Risk**

The Net Amount at Risk is the amount determined by subtracting (a) from the greater of (b) or (c) where:

    (a)    is the Policy Value at the end of the immediately preceding Business Day less all charges due on the Policy Date or subsequent Processing Date;

    (b)    is the Total Face Amount plus the death benefit payable under any Supplementary Benefit riders, where charges are deducted from the Policy Value and are based on the Net Amount at Risk, divided by the Death Benefit Discount Factor shown in Section 1, plus the Policy Value for policies electing Death Benefit Option 2; and

    (c)    is the amount defined in (a) multiplied by the applicable Minimum Death Benefit Factor for the Life Insured's Age as shown in Section 2.

12

## 14. POLICY VALUE (continued)

**Other Deductions**

We will deduct a Surrender Charge, as detailed in Section 5 and Section 17, if during the Surrender Charge Period:

    (a)   you surrender this policy for its Net Cash Surrender Value;

    (b)   you make a partial withdrawal of the Net Cash Surrender Value and  the withdrawal results in a reduction in the Base Face Amount;

    (c)   you request reductions in the Base Face Amount that exceed the Partial Surrender Charge Decrease Exemption;

    (d)   you do not pay an amount due at the end of the grace period as described in Section 10, and your policy terminates.

## 15. LOAN ACCOUNT AND GUARANTEED INTEREST ACCOUNT

The Policy Value at any time is equal to the sum of values you have in the Loan Account and the Guaranteed Interest Account.

**Loan Account Value**

The amount you have in the Loan Account at any time equals:

    (a)   amounts transferred to it for loans or borrowed loan interest; plus

    (b)   interest credited to it; less

    (c)   amounts transferred from it for loan repayment.

For details regarding the Loan Account, see Section 16.

**Guaranteed Interest Account Value**

The amount you have in the Guaranteed Interest Account at any time equals:

    (a)   Net Premiums allocated to it; plus

    (b)   amounts transferred to it for loan repayments; plus

    (c)   interest credited to it; less

    (d)   amounts deducted from it; less

    (e)   amounts transferred from it for loans; less

    (f)   amounts withdrawn from it.

We will determine the rate or rates of interest to be credited to the Guaranteed Interest Account.  Interest will be credited no less frequently than annually.  Interest is nonforfeitable after crediting.  The rate or rates of interest will be determined prospectively and will be based on our expectations for the Guaranteed Interest Account's future investment earnings, persistency, mortality, expense and reinsurance costs and future tax, reserve, and capital requirements, but in no event will the credited interest rate be less than the Guaranteed Interest Account Annual Rate shown in Section 1.  The rate or rates of interest will be determined on a uniform basis for life insureds with the same timing and amount of premium, same amount of Policy Debt, and whose policies have been in force for the same length of time.  For all transactions, interest is calculated from the date of the transaction.

## 16. LOANS

At any time while this policy is in force and there is Available Loan Value, you can get a loan by written request.  Each loan must be for at least the Minimum Loan Amount shown in Section 1.  We may require a loan agreement from you as the policy is the only security for the loan.  We may defer loans as provided by law or as provided in Section 24.  Loans may not be made if the policy is in the grace period as described in Section 10.

**Available Loan Value**

The Available Loan Value on any date is the Net Cash Surrender Value, less estimated loan interest and the Monthly Deductions due to the next Policy Anniversary.  In no event, however, will the Available Loan Value be less than 90% of the Net Cash Surrender Value.  Values will be determined, subject to Section 24, as of the end of the Business Day on which the loan application is received at our Service Office.

13

PU1309A

## 16. LOANS (continued)

**Loan Account**

When you take out a loan, or when loan charges are borrowed, we will transfer amounts from the Guaranteed Interest Account into the Loan Account.  Amounts we transfer into the Loan Account cover the loan principal.

Interest is credited to the Loan Account and interest is also charged on the Policy Debt, as described in the Loan Interest Charged and Loan Interest Credited provisions.

**Loan Interest Charged**

The loan interest rate is variable.  It will be set each year at your Policy Anniversary and it will not change during the year.

The loan interest rate charged will not exceed the greater of (a) and (b), where:

(a)     is the Guaranteed Interest Account Rate shown in Section 1 plus 1% per annum; and

(b)     is the Moody's Corporate Bond Yield Average-Monthly Average Corporates for the calendar month ending two months before the beginning of the month in which your Policy Anniversary falls.  For example, if your Policy Anniversary is in April; we would use the Average for January.

If the maximum is at least one-half of one percent smaller than the rate we have set for the previous Policy Year, we will reduce the rate to a rate no more than that maximum.  If the maximum is at least one-half of one percent greater than the rate we have set for the previous Policy Year, we will increase the rate to a rate no more than that maximum.

Moody's Corporate Bond Yield Average-Monthly Average Corporates referred to above is published in the United States by Moody's Investors Service, Inc.  In the event it is no longer published, we will use a similar average published by another United States bond rating agency.

Interest will accrue daily on loans.  Loan interest will be payable on each Annual Processing Date and on the date the loan is settled.  Accrued interest may be paid at any time at the equivalent effective rate.  In the event that you do not pay the loan interest charged in any Policy Year, it will be borrowed against the policy and added to the Policy Debt in arrears at the Policy Anniversary.

We will increase the Loan Interest Rate at any time we determine that the rate being charged could cause a loan to be taxable under any applicable ruling, regulation, or court decision.  In such case, we will increase the Loan Interest Rate to an amount that we determine would result in the transaction being treated as a loan under federal tax law.

Loan interest will continue to be charged, as described in Section 13, when Monthly Deductions and premium payments cease at the Life Insured's Age 121.

**Loan Interest Credited**

Loan interest will accrue daily to amounts in the Loan Account.  The effective loan interest rate credited is the difference between the effective loan interest rate charged and the Loan Interest Credited Differential.  The difference, in terms of dollars, is the cost of keeping a loan.  The differential will not exceed the Maximum Loan Interest Credited Differential shown in Section 1.

**Loan Repayment**

You may repay the Policy Debt in whole or in part at any time prior to the death of the Life Insured and while the policy is in force.  When you make a loan payment or repay a loan, we will transfer an amount equal to the amount received, less the Loan Interest Credited Differential multiplied for such amount received, from the Loan Account to the Guaranteed Interest Account.

Subject to any rider, endorsement, or other provisions, while a loan exists, we will treat any amounts you pay as premiums, unless you request in writing that they be treated as loan repayments.

14

## 17. SURRENDERS AND WITHDRAWALS

**Surrender of the Policy**

You may surrender this policy upon written request for its Net Cash Surrender Value at any date prior to the death of the Life Insured. We will determine the Net Cash Surrender Value on the Surrender Date. We will process the request and pay the Net Cash Surrender Value only if we have not received due proof that the Life Insured died prior to the Surrender Date. After we receive your written request to surrender the policy, no insurance will be in force. If you surrender the policy during the Surrender Charge Period, we will deduct a Surrender Charge from your Policy Value in calculating the Net Cash Surrender Value. The Surrender Charge and Surrender Charge Period are shown in Section 1.

**Withdrawals**

Once per Policy Month after the first Policy Year, you may request a withdrawal of part of the Net Cash Surrender Value if available. Withdrawals are subject to the following conditions:

(a) without our approval, each withdrawal must be for at least the Minimum Withdrawal Amount shown in Section 1;

(b) after the withdrawal, the remaining Net Cash Surrender Value must be at least equal to 3 times the Monthly Deductions at the time of the withdrawal;

(c) we will process the withdrawal, thereby reducing the Policy Value, as of the end of the Business Day on which we receive your written request;

(d) we will deduct a pro-rata Surrender Charge if the withdrawal occurs during the Surrender Charge Period, and the withdrawal results in a reduction in Base Face Amount;

(e) we will reduce the amount of the withdrawal if the amount is not sufficient to pay the withdrawal plus any pro-rata Surrender Charge; and

(f) we will reduce the amount of the withdrawal if it would otherwise cause the Base Face Amount to fall below the Minimum Base Face Amount shown in Section 1.

If Death Benefit Option 1 is in effect at the time of the withdrawal, the Total Face Amount of the policy will be reduced:

(a) by the amount of the withdrawal, if at the time of the withdrawal the Death Benefit equals the Total Face Amount; otherwise

(b) by the amount, if any, by which the withdrawal (including any applicable pro-rata surrender charge exceeds the difference between the Minimum Death Benefit and the Total Face Amount, divided by the applicable Minimum Death Benefit Factor for the Life Insured's Age as shown in the Table of Rates in Section 2.

Withdrawals will generally reduce any Supplemental Face Amount first, and then the Base Face Amount. We reserve the right to allow a reduction in Base Face Amount prior to fully reducing any Supplemental Face Amount. If the Death Benefit on any given day is equal to the Policy Value times the applicable Minimum Death Benefit Factor, withdrawals on such day will reduce the Death Benefit by the amount withdrawn times the applicable Minimum Death Benefit Factor until the Death Benefit is equal to the Total Face Amount. Your Death Benefit will continue to be determined in accordance with Sections 6 and 13, subject to these provisions.

If Death Benefit Option 2 is in effect, an amount equal to any withdrawal will be deducted from the Policy Value. Withdrawals will not affect the Total Face Amount. Your Death Benefit will continue to be determined in accordance with Sections 6 and 13.

PU1509A

## 18. OWNER AND BENEFICIARY

Until the Life Insured's death, with the written consent of any irrevocable beneficiaries, you can receive any amount payable under the policy and exercise all rights and privileges granted by the policy.

**Change of Owner**

Until the Life Insured's death, you can change the ownership of the policy by written request. The change will take effect as of the date you signed the written request. It will not apply to any payments we made or any action we may have taken before we received your written request.

**Trustee Owner**

Should the owner be a trustee, payment to the trustee(s) of any amount to which the trustee(s) is (are) entitled under the policy, either by death or otherwise, will fully discharge us from all liability under the policy to the extent of the amount so paid.

**Joint Ownership**

Two or more owners will own the policy as joint tenants with right of survivorship, unless otherwise requested on the application or in any subsequent assignment of the policy. On death of any of the owners, the deceased owner's interest in the policy passes to the surviving owner(s).

**Successor Owner**

If an owner dies prior to the death of the Life Insured, a named successor owner will, if then living, have all the owner's rights and interest in the policy. The owner, with the consent of any irrevocable beneficiary, can cancel or change the designation of successor owner prior to the death of the Life Insured by agreement in writing with us.

The following four provisions will apply unless there is a beneficiary designation in force that provides otherwise.

**Beneficiary Classification**

You can appoint beneficiaries for the Insurance Benefit in three classes: primary, secondary, and final. Beneficiaries in the same class will share equally in the Insurance Benefit payable to them.

**Payment to Beneficiaries**

We will pay the Insurance Benefit:

    (a)   to any primary beneficiaries who are alive when the Life Insured dies; or

    (b)   if no primary beneficiary is then alive, to any secondary beneficiaries who are then alive; or

    (c)   if no primary or secondary beneficiary is then alive, to any final beneficiaries who are then alive.

**Change of Beneficiary**

Until the Life Insured's death, you can change the beneficiary by written request unless you make an irrevocable designation. We are not responsible if the change does not achieve your purpose. The change will take effect as of the date you signed such request. It will not apply to any payments we made or any action we may have taken before we received your written request.

**Death of Beneficiary**

If no beneficiary is alive when the Life Insured dies, the Insurance Benefit will be payable to you; or if you are the Life Insured, to your estate. Unless otherwise provided, if a beneficiary dies before the seventh day after the death of the Life Insured, we will pay the Insurance Benefit as if the beneficiary had died before the Life Insured.

## 19. ASSIGNMENT

Your interest in this policy may be assigned with the written consent of any irrevocable beneficiary. Your interest, any interest of the Life Insured and of any revocable beneficiary shall be subject to the terms of the assignment, but such assignment shall not affect the interest of any irrevocable beneficiary.

We will not be on notice of any assignment unless it is in writing, nor will we be on notice until a duplicate of the original assignment has been filed at our Service Office. We assume no responsibility for the validity or sufficiency of any assignment.

16

## 20. MISSTATEMENTS

If the sex (if issued on a sex distinct basis) or age of the Life Insured was misstated in the application, we will, if necessary, change the Base Face Amount, any Supplemental Face Amount, and every other benefit to that which would have been purchased at the correct sex (if issued on a sex distinct basis) or age by the most recent Cost of Insurance Charge.

## 21. SUICIDE

If the Life Insured commits suicide, while sane or insane, within 2 years from the Issue Date, the policy will terminate on the date of such suicide and we will pay (in place of all other benefits, if any) an amount equal to the premiums paid less the amount of any Policy Debt on the date of death and less any withdrawals.

If the Life Insured commits suicide, while sane or insane, after 2 years from the Issue Date and within 2 years from the date of an increase in Death Benefit resulting from any payment of premium we are authorized to refuse under Section 4, the benefits payable under the policy will not include the amount of such Death Benefit increase but will include the amount of premium that pertains to the increase.

We reserve the right under this provision to obtain evidence of the manner and cause of death of the Life Insured.

## 22. INCONTESTABILITY

This policy shall be incontestable after it has been in force during the lifetime of the Life Insured for two years from the Issue Date, except for fraud or policy termination, or any provision for reinstatement or policy change requiring evidence of insurability.

In the case of reinstatement or any policy change requiring evidence of insurability, the contestable period shall be two years from the effective date of such reinstatement or policy change.  Any premium payment which we accept subject to insurability, and any increase in the Death Benefit resulting from such payment, shall be considered a policy change for purposes of this Section.

We reserve the right under this provision to obtain evidence of the manner and cause of death of the Life Insured.

## 23. THE CONTRACT

The written application for the policy is attached at issue.  The entire contract between the applicant and us consists of the policy, such application, and any riders and endorsements.  However, additional written requests or applications for policy changes or acceptance of excess payment may be submitted to us after issue and such additional requests may become part of the policy.  All statements made in any application shall, in the absence of fraud, be deemed representations and not warranties.  We will use no statement made by or on behalf of the Life Insured to defend a claim under the policy unless it is in a written application.

An exchange of this policy for a new policy on a different plan may be made by agreement between you and us in accordance with our published rules in effect at that time.

We reserve the right to make any changes necessary in order to keep this policy in compliance with any changes in federal or state tax laws.  Other changes in this policy may be made by agreement between you and us.  Only the President, Vice President, the Secretary, or an Assistant Secretary of the Company has authority to waive or agree to change in any respect any of the conditions or provisions of the policy, or to extend credit or to make an agreement for us.

## 24. RIGHT TO POSTPONE PAYMENT OF BENEFITS

We reserve the right to postpone the payment of Net Cash Surrender Value, withdrawals, and policy loans, for up to six months after we receive such written request, except when required to make a premium payment.

17                                                                                                   PU1709A

## 25. CLAIMS OF CREDITORS

The proceeds and any income payments under the policy will be exempt from the claims of creditors to the extent permitted by law. These proceeds and payments may not be assigned or withdrawn before becoming payable without our agreement.

## 26. REPORTS TO OWNER

Within 30 days after each Policy Anniversary, we will send you a report at no charge showing:

- (a)  the Death Benefit;
- (b)  the Policy Value;
- (c)  any Policy Debt;
- (d)  any Loan Account balance and loan interest charged since the last report;
- (e)  the premiums paid and policy transactions for the year; and
- (f)  any further information required by law.

Upon request, we will provide you with a report of projected future values. We will provide one report annually without charge. For additional reports you request, we reserve the right to charge a reasonable fee, not to exceed $50.

## 27. HOW VALUES ARE COMPUTED

We provide Cash Surrender Values that are at least equal to those required by law. Cash Surrender Values will be at least as great as those calculated using the gender distinct (the 2001 CSO Sex and Smoker Distinct U ANB Mortality Table) or unisex (the 2001 CSO (80) Smoker Distinct U ANB Mortality Table) table, with substandard ratings as applicable. The Maximum Monthly Cost of Insurance rates are no greater than those derived from the appropriate gender distinct or unisex tables named above. Reserves will be at least as great as the minimum required by law.

A detailed statement of the method of computing the values of this policy has been filed with the insurance department of the state shown in Section 1.

18



**John Hancock Life Insurance Company (U.S.A.)**
A Stock Company

## DISCLOSURE
## FOR POLICIES WITH NO-LAPSE GUARANTEES

This policy is guaranteed to stay in force for a number of years as long as you have paid at least as much as the required premiums.  This is called a no-lapse guarantee.

Even though it contains a no-lapse guarantee, this policy may provide nonforfeiture benefits (such as cash surrender values) which are less than those that would be provided if the no-lapse guarantee were issued as a separate policy (for example, as a term policy).  However, the premiums for the term policy might be higher than those for the no-lapse guarantee in this policy.

When considering the purchase of this policy, you should consider the value to you of higher nonforfeiture benefits versus the level of the premiums required to keep your insurance coverage in force.

The above references to no-lapse guarantee include the Death Benefit Guarantee if it is included in this policy.

V786-2ca



the future is yours

9 4818952

**Service Office:**
Life New Business
197 Clarendon Street
Boston MA 02116-5010

## Application for Life Insurance
**John Hancock Life Insurance Company (U.S.A.)**
(hereinafter referred to as The Company)

Print and use black ink. Any changes must be initialed by the Proposed Life Insured(s) and Owner.

## PROPOSED LIFE INSURED(S)   LIFE ONE

1. a) Name  Irene S. Bates
   First        Middle        Last

   b) Date of Birth  **REDACTED**          c) Sex ☐ M ☑ F

   d) Place of Birth  Texas                USA
   State                Country

   e) Citizenship ☑ U.S. ☐ Other _____

   f) Social Security Number (SSN),  **REDACTED**
   if applicable

   g) Driver's
   License No.  n/a                State _____

   h) Primary
   Residence  2307 Via Puerta No. A
   Address - Street No. & Name         Apt. No.

   Laguna Woods        CA        92637
   City                State        Zip Code

   i) Years at this Address ____4____

   j) Tel. Nos.  **REDACTED**

   k) If you live at your primary residence less than 6 months per year,
   provide the address for your secondary residence.

   Secondary
   Residence _____
   Address - Street No. & Name        Apt. No.

   _____
   City        State        Zip Code

   l) Years at this Address _____

   m) Occupation  Retired

   _____
   Name of Employer

## LIFE TWO (Survivorship)

2. a) Name
   First        Middle        Last

   b) Date of Birth                c) Sex ☐ M ☐ F
   month    day    year

   d) Place of Birth
   State                Country

   e) Citizenship ☐ U.S. ☐ Other _____

   f) Social Security Number (SSN),
   if applicable

   g) Driver's
   License No.                State

   h) Primary
   Residence _____
   Address - Street No. & Name        Apt. No.

   _____
   City        State        Zip Code

   i) Years at this Address _____

   j) Tel. Nos. _____
   Home        Business

   k) If you live at your primary residence less than 6 months per year,
   provide the address for your secondary residence.

   Secondary
   Residence _____
   Address - Street No. & Name        Apt. No.

   _____
   City        State        Zip Code

   l) Years at this Address _____

   m) Occupation _____

   _____
   Name of Employer

## OWNER – Complete only if Owner is other than Proposed Life Insured(s)

If Trust Owner,
complete questions
3. a), d) and e) and
Trust Certification
PS5101.

Trust Agreement
may be required.

Provide all details as
above for other
Owner in Special
Requests on Page 4.

3. a) Name _____

   b) Date
   of Birth _____      c) Relationship to      d) Social Security/Tax ID Number,
   month    day    year          Proposed Life              if applicable
                                  Insured(s)

   e) Address _____
   Street No. & Name        Apt. No.    City        State        Zip Code

4. Multiple Owners
   Type of ownership  ☐ Joint with right of survivorship    ☐ Tenants in common

## BENEFICIARY INFORMATION – Subject to change by Owner

List additional
beneficiaries in
Special Requests
on Page 4.

5. a) Name  Joseph M Bates              ☑ Primary    Son        100.00%
   First        Middle        Last                  Relationship to Proposed    Percentage
                                                    Life Insured(s)

   b) Name _____      ☐ Primary              _____%
   First        Middle        Last        ☐ Secondary   Relationship to Proposed    Percentage
                                                        Life Insured(s)

## EXISTING AND PENDING INSURANCE

If more space is required attach additional page that has been signed and dated by Owner if necessary,

6. a) Provide information for each policy in force on the Proposed Life Insured(s) with all companies, including any policy that has been sold, assigned, or settled to or with a settlement or viatical company or any other person or entity.

| Proposed Life Insured | Company | Insurance Personal | Business | Issue Date month day year | To Remain in Force? Yes | No | Amount Including Riders |
|---|---|---|---|---|---|---|---|
| ☑ One  ☐ Two | New York Life | ☑ | ☐ | 6/1988 | ☑ | ☐ | $ 50,000.00 |
| ☐ One  ☐ Two | | ☐ | ☐ | | ☐ | ☐ | $ |
| ☐ One  ☐ Two | | ☐ | ☐ | | ☐ | ☐ | $ |
| ☐ One  ☐ Two | | ☐ | ☐ | | ☐ | ☐ | $ |
| ☐ One  ☐ Two | | ☐ | ☐ | | ☐ | ☐ | $ |
| ☐ One  ☐ Two | | ☐ | ☐ | | ☐ | ☐ | $ |

b) Have you ever had an application for life insurance declined, postponed, rated substandard or offered with a reduced face amount?

Life One ☐ No ☐ Yes – give details _____
Life Two ☐ No ☐ Yes – give details _____

c) Including this application, total insurance currently applied for with all companies (not including informal inquiries).
Provide name of Life Insurance Company and amount applied for.

| Life One Company | Amount Including Riders | Life Two Company | Amount Including Riders |
|---|---|---|---|
| John Hancock | $ 1,000,000.00 | | $ |
| | $ | | $ |
| | $ | | $ |

d) Of the total amount applied for in c) above including this application, what is the maximum that you will accept?

| | Life One | Life Two |
|---|---|---|
| | $ 1,000,000.00 | $ |

## JUVENILE INSURANCE

Complete e) & f) if juvenile insurance is applied for.

e) Are all siblings equally insured? ☐ Yes ☐ No
f) Amount of life insurance currently in force or pending on parent(s)/guardian(s)? $ _____
   If none, provide reason. _____

## REPLACEMENTS – OWNER

7. Will this insurance replace existing policies or are you considering using funds from existing policies to pay premiums due on the new policy or contract?

☐ Yes ☑ No  If 'Yes', please complete the IMPORTANT NOTICE: Replacement of Life Insurance or Annuities (Standard Form), NB5017.

## FINANCIAL QUESTIONS

Copies of financial statements, estate analyses, contractual agreements may be required.

8. Is there, or are you considering entering into, an understanding or agreement providing for any person or entity, other than the Owner and beneficiaries specified in this application, to have any right, title or other legal or beneficial interest in any policy issued on the life of the Proposed Life Insured(s) as a result of this application?
☑ No  ☐ Yes - If 'Yes', provide details _____

9. Have you been offered any money or other considerations by any person or entity in connection with this application?
☑ No  ☐ Yes - If 'Yes', provide details _____

10. a) What is the source of the premiums for the policy(ies) currently applied for? Personal Income _____
    b) Will the Owner be receiving funding for the premiums from an individual and/or entity other than the Proposed Life Insured(s) or the Proposed Life Insured's employer?
    ☐ Yes - If 'Yes', answer question 11 below.   ☑ No - If 'No', proceed to question 12.

11. a) Will the premiums be financed through a loan?
    ☐ No - If 'No' describe the funding arrangement _____
    ☐ Yes - If 'Yes' provide the loan details in question 11 b), c), d), e) and f) below.
    b) What is the annual interest rate? _____ %
    c) In addition to repayment of principal and interest, are there other fees, charges or other consideration to be paid?
    ☐ No  ☐ Yes - If 'Yes', provide details _____

## FINANCIAL QUESTIONS continued

Copies of financial statements, estate analyses, contractual agreements may be required.

11. d) What is the duration of the loan? _____

e) Who is the lender? _____

f) What amount and type of collateral is required to secure the loan? $_____  Amount          Type of Collateral

12. a) What is the purpose of this insurance? Provide for family, pay expenses
(e.g. estate conservation, buy-sell, keyperson)

| | Life One | Life Two |
|---|---|---|
| b) Gross annual earned income (salary, commissions, bonuses, etc.) | $ 127,000.00 | $ |
| c) Gross annual unearned income (dividends, interest, gross real estate income, etc.) | $ 51,000.00 | $ |

d) Household net worth (combined) $ 1,400,000.00

e) In the last 5 years, has the Proposed Life Insured(s) or any business of which he/she is a partner/owner/executive had any major financial problems (bankruptcy, etc.)? Life One ☒ No ☐ Yes - give details _____

Life Two ☐ No ☐ Yes - give details _____

## BUSINESS FINANCIAL QUESTIONS

Complete for ALL Business Insurance.

Copies of financial statements may be required.

| | | Current Year | Previous Year |
|---|---|---|---|
| 13. a) | Assets | $ _____ | $ _____ |
| b) | Liabilities | $ _____ | $ _____ |
| c) | Gross Sales | $ _____ | $ _____ |
| d) | Net Income | $ _____ | $ _____ |
| e) | Fair Market Value of the business | $ _____ | $ _____ |

f) How was the amount applied for determined?

g) What percentage of the business is owned by the Proposed Life Insured(s)? _____ %

h) Are other partners/owners/executives insured or applying for life insurance with any company? ☐ No ☐ Yes - give details

## LIFESTYLE QUESTIONS

Please provide details in No. 18 for 'Yes' answers to Lifestyle Questions.

| | Life One | Life Two |
|---|---|---|
| 14. Do you expect to travel outside the U.S. or Canada, or change your country of residence in the next 2 years? | ☐ Yes ☒ No | ☐ Yes ☐ No |
| 15. a) Have you flown as a student pilot, licensed pilot, or crew member in any aircraft, including ultralight planes, in the last 2 years? If 'Yes', please complete **Aviation Questionnaire NB5009.** | ☐ Yes ☒ No | ☐ Yes ☐ No |
| b) Have you engaged in any form of motor vehicle or power boat racing, sky diving/parachuting, skin or scuba diving, hang-gliding, mountain climbing, or any other hazardous activities in the last 2 years? If 'Yes', please complete **Avocation Questionnaire NB5010.** | ☐ Yes ☒ No | ☐ Yes ☐ No |
| 16. a) Have you been cited for 2 or more moving violations within the last 2 years? | ☐ Yes ☒ No | ☐ Yes ☐ No |
| b) Have you been cited for driving while intoxicated or while otherwise impaired? | ☐ Yes ☒ No | ☐ Yes ☐ No |
| 17. In the last 10 years, have you been convicted of a felony offense? | ☐ Yes ☒ No | ☐ Yes ☐ No |

18. | Question No. | Life One | Question No. | Life Two |

_____

## PRIMARY PHYSICIAN – PROPOSED LIFE INSURED(S)

**LIFE ONE**

19. Provide name and address of primary physician.

Name _____

Address _____  Suite No.

_____ Zip Code

**LIFE TWO**

20. Provide name and address of primary physician.

Name _____ First   Middle   Last

Address _____ Street No. & Name   Suite No.

City _____ State _____ Zip Code

REDACTED

## INFORMATION REGARDING LAST MEDICAL CONSULTATION

**LIFE ONE**

21. a) Date of last visit to
ANY doctor/physician

b) Reason
for visit

c) Diagnosis or
outcome of visit

d) Treatment/medication
prescribed _____

e) Name of doctor/physician for above (check one)
☑ Primary doctor/physician
☑ Other doctor/physician (provide name and address)

REDACTED

**LIFE TWO**

22. a) Date of last visit to
ANY doctor/physician _____ _____ _____
month        day        year

b) Reason
for visit _____

c) Diagnosis or
outcome of visit

d) Treatment/medication
prescribed _____

e) Name of doctor/physician for above (check one)
☐ Primary doctor/physician
☐ Other doctor/physician (provide name and address)

First        Middle        Last

Street No. & Name        Suite No.

City        State        Zip Code

| | Life One | Life Two |
|---|---|---|

23. Has a **John Hancock Medical Exam NB5033** been completed or will it be completed?
If 'No', complete question 24 and Medical Certification below.

Life One: ☑ Yes ☐ No    Life Two: ☐ Yes ☐ No

24. Have you ever used tobacco or nicotine products in any form (including cigarettes, cigars, cigarillos, a pipe, chewing tobacco, nicotine patches or gum)?
If 'Yes', give details below.

Life One: ☐ Yes ☑ No    Life Two: ☐ Yes ☐ No

| Life One: | | | | Date Last Used | | |
|---|---|---|---|---|---|---|
| Product | Frequency | Current | Past | month | day | year |
| Cigarettes | pack(s)/day | ☐ | ☐ | | | |
| Cigars | ___ x /day | ☐ | ☐ | | | |
| Other: | ___ x /day | ☐ | ☐ | | | |

| Life Two: | | | | Date Last Used | | |
|---|---|---|---|---|---|---|
| Product | Frequency | Current | Past | month | day | year |
| Cigarettes | pack(s)/day | ☐ | ☐ | | | |
| Cigars | ___ x /day | ☐ | ☐ | | | |
| Other: | ___ x /day | ☐ | ☐ | | | |

## MEDICAL CERTIFICATION

Complete this section when submitting a medical examination form of another company in lieu of John Hancock Medical Exam NB5033.

25. 

| Name of Proposed Life Insured | Name of Insurance Company | Date of Examination |
|---|---|---|
| | | month   day   year |
| 1. | | |
| 2. | | |

a) To the best of your knowledge and belief, is the information in the examination true and complete as of the date this application is signed?

Life One: ☐ Yes ☐ No    Life Two: ☐ Yes ☐ No

## COVERAGE APPLIED FOR

26. Complete the applicable **Coverage Details Form NB5007** (Universal Life), **NB5008** (Variable Life) or **NB5013** (Term & Traditional Life) for details of the policy being applied for, including Supplementary Benefits and other benefit options.

## SPECIAL REQUESTS – Attach additional page if more space is required.

## TEMPORARY LIFE INSURANCE AGREEMENT APPLICATION

Money may NOT be collected and the **Temporary Life Insurance Receipt and Agreement NB5004** may NOT be issued if:
1. questions 28 and 29 are answered Yes or left blank; or
2. the Proposed Life Insured(s) is under age 20 or over age 70; or
3. the amount applied for is more than $10,000,000 (single life) or $15,000,000 (survivorship).

27. Is coverage being applied for under the Temporary Life Insurance Agreement? ☐ Yes ☑ No
If 'Yes', answer questions 28 and 29.

28. Within the last 24 months, has the Proposed Life Insured(s) under this application:

| | Life One | Life Two |
|---|---|---|
| a) consulted a medical professional, been diagnosed with or been treated for or had treatment recommended by a member of the medical profession for any heart problem, stroke or cancer? | ☐ Yes ☐ No | ☐ Yes ☐ No |
| b) consulted with or scheduled a consultation with a medical professional for any symptoms or medical concerns? | ☐ Yes ☐ No | ☐ Yes ☐ No |
| c) received a recommendation from a medical professional for any consultation, testing, investigation or surgery that has not yet been completed? | ☐ Yes ☐ No | ☐ Yes ☐ No |
| d) been declined for life insurance? | ☐ Yes ☐ No | ☐ Yes ☐ No |
| 29. Does the Proposed Life Insured(s) reside outside the United States more than 6 months per year? | ☐ Yes ☐ No | ☐ Yes ☐ No |

## PRE-AUTHORIZED PAYMENT PLAN

**Attach voided sample check.**

30. Request for Pre-Authorized Payment Plan

| Policy Number(s) | Name(s) of Person(s) Insured | First Bank Withdrawal Effective | | | Type of Payment and Amount | |
|---|---|---|---|---|---|---|
| | | month | day | year | Premium | Loan |
| | | | | | | |
| | | | | | | |

By completing this section, I hereby authorize and request The Company to draw checks (which may include withdrawals made electronically) monthly on my account to pay premiums, and/or repay loans on the policies listed above or any policies subsequently designated.

I understand and agree that:

a) Such checks (which may include withdrawals made electronically) shall be drawn monthly to pay premiums falling due on the designated policies.

b) While the Pre-Authorized Payment Plan is in effect, The Company will not give notices of premiums falling due on such policies.

c) The Pre-Authorized Payment Plan may be terminated by the bank depositor or by written notice to The Company by the Owner. If the Pre-Authorized Payment Plan is terminated, premiums falling due thereafter shall be payable directly to The Company as provided in the policy.

d) The first premium paid must be submitted by check.

## DECLARATIONS

The Proposed Life Insured(s) and Owner (or Parent or Guardian) declare that the statements and answers in this application and any form that is made part of this application are complete and true.

In addition, I/we understand and agree that:

1. The statements and the answers in this application, which include coverage details and any supplemental form relating to health, aviation practices or lifestyle of the Proposed Life Insured(s), will become part of the insurance policy issued as a result of this application.

2. a) Any life insurance policy issued as a result of this application will be effective on the later of the date the first premium has been paid in full and the date the policy has been delivered, provided that since the date of the application there has been no deterioration in the insurability of the Proposed Life Insured(s), no changes in the lifestyle of the Proposed Life Insured(s), no change in the financial circumstances of the Owner, and nothing has occurred that would require a change to any statement or answer in any part of this application in order to make the statement or answer true and complete as of the date the policy becomes effective. If there has been a deterioration in insurability: i) if there is no Temporary Life Insurance Agreement (TIA) coverage, the policy will not be put into effect, and ii) if there is TIA coverage and the TIA has not ended, the policy will be put into effect but only to the limit of the TIA coverage amount.

   b) If premiums are paid prior to delivery of the policy and the terms and conditions of the TIA are satisfied, insurance prior to the effective date shall be provided only under the TIA and according to its terms.

3. Any person who knowingly and with intent to defraud any insurer:

   a) files an application for insurance or statement of claim containing any materially false information, or b) conceals for the purpose of misleading any insurer, information concerning any material fact thereto, may be committing a fraudulent insurance act.

4. If coverage under a TIA is applied for, I/we have received, read and understand the terms and conditions of the **Temporary Life Insurance Receipt and Agreement NB5004.**

## OWNER/TAXPAYER CERTIFICATION QUESTIONS

**U.S. Person(s) (including U.S. Resident/Alien(s))**
Under the penalties of perjury, I, the Owner, certify that:

1. The number shown on Page 1 of the application is my correct taxpayer identification number (if number has not been issued, write "Applied for" in the box on Page 1), AND

2. Pick the applicable box:
   - ☑ I am not subject to Backup Tax Withholding because (a) I am exempt from Backup Tax Withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to Backup Tax Withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to Backup Tax Withholding, OR
   - ☐ The Internal Revenue Service (IRS) has notified me that I am subject to Backup Tax Withholding.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid Backup Tax Withholding.

**Non U.S. Person(s) and Non Resident Alien(s)**
I am providing IRS Form W-8BEN. ☐ Yes ☐ No

## AUTHORIZATION TO OBTAIN INFORMATION

I/We, the Proposed Life Insured(s), authorize:

1. The Company to obtain an investigative consumer report on me/us.

2. Any medical professional, medical care provider, hospital, clinic, laboratory, insurance company, the Medical Information Bureau (MIB Inc.) to give The Company and its reinsurers information about me/us or any minor child/children who is/are to be insured.

The information collected by The Company may relate to the symptoms, examination, diagnosis, treatment or prognosis of any physical or mental condition.

I/We further authorize The Company to disclose such information and any information developed during its evaluation of this application to:

(a) its reinsurers; (b) the MIB Inc.; (c) other insurance companies as designated by me/us; (d) me/us; (e) my/our insurance agent, when that agent is seeking insurance coverage through The Company on my/our behalf; or (f) any medical professional designated by me/us.

I/We acknowledge receipt of the Notice of Disclosure of Information relating to the underwriting process, investigative consumer reports and the MIB Inc.

This authorization will be valid for two years from the date of the application shown below. A photocopy of this authorization will be as valid as the original.

Information collected under this authorization will be used by The Company to evaluate my/our application for insurance, to evaluate a claim for benefits, or for reinsurance or other insurance purposes.

I am/We are entitled, or my/our authorized representative is entitled, to a copy of this authorization.

## SIGNATURES

Please read all of the above Declarations and Authorizations before signing this form.

If Proposed Life Insured(s) is under age 15 Parent or Guardian must sign and include relationship.

| Signed at | City | State | This | Day of | | Year |
|---|---|---|---|---|---|---|
| Laguna Woods | | Ca | April | 13th | | 2010 |

Signature of Owner (Signing Officer please provide title or corporate seal)

X _Clive S. Foster_

Signature of Proposed Life Insured One if other than Owner (Parent or Guardian if under age 15)

X

Signature of Proposed Life Insured Two if other than Owner

X

**Agent signature**

Signature of Agent/Registered Representative

_Clive Foster_

Signed this   Day of   Year

X

*John Hancock.*
the future is yours

94818952

**Service Office:**
Life New Business
197 Clarendon Street
Boston MA 02116-5010

## Coverage Details – Universal Life
**John Hancock Life Insurance Company (U.S.A.)**
(hereinafter referred to as The Company)

*Fil–41NBHN*

This form is part of the Application for Life Insurance for the Proposed Life Insured(s).
Print and use black ink. Any changes must be initialed by the Proposed Life Insured(s) and/or Owner.

## PROPOSED LIFE INSURED(S)

**LIFE ONE**

1. Name Irene S. Bates

First            Middle            Last

**LIFE TWO**

2. Name

First            Middle            Last

## PREMIUMS

3. Frequency: ☑ Annual  ☐ Semi-Annual  ☐ Quarterly  ☐ List Billed
   ☐ Pre-Authorized Payment Plan (Please complete either Pre-Authorized Payment Plan Section of the Application for Life Insurance, NB5000 or Request for Pre-Authorized Payment Plan, NB5087)
   ☐ Other

### PREMIUM NOTICES AND CORRESPONDENCE

4. Send Premium Notices to:  (Select One)
   ☑ Owner  ☐ Proposed Life Insured One  ☐ Proposed Life Insured Two
   ☐ Other

   _____
   Name

   _____
   Street No. & Name, Apt. No., City, State, Zip Code

5. Send Correspondence to:  (Select One)
   ☑ Same as Above
   ☐ Other

   _____
   Name

   _____
   Street No. & Name, Apt. No., City, State, Zip Code

## ADDITIONAL INFORMATION

6. If an additional or optional policy is being applied for in a separate application, state plan and amount:

   _____  $ _____
   Plan Name

7. Do you understand that you may need to pay premiums in addition to Planned Premium if the current policy charges or actual interest credited are different from the assumptions used in your illustration (assuming the requirements of any applicable guaranteed death benefit feature have not been satisfied)?  ☑ Yes  ☐ No

## LIFE INSURANCE QUALIFICATION TEST AND DEATH BENEFIT OPTION

8. Select One:  ☐ Guideline Premium  ☑ Cash Value Accumulation
   Note: Elected test cannot be changed after the policy is issued. You may request an illustration on both tests before making your election.

9. Death Benefit Option: ☑ Option 1 (Face Amount/TFA)  ☐ Option 2 (Face Amount/TFA plus Policy Value)

## COVERAGE SELECTION

### UNIVERSAL LIFE – SINGLE LIFE

Choose one product from Coverage Selection section.

☐ **Protection UL-G – Face Amount $** _____

10. Select the Policy Protection Rider listed in the illustration's Coverage Summary section.
    ☐ Policy Protection Rider (6% Fixed Loan Rate)        ☐ Policy Protection Rider - Enhanced (6% Fixed Loan Rate)
    ☐ Policy Protection Rider - Flex (6% Fixed Loan Rate)  ☐ Policy Protection Rider - Cash Value Advantage (Variable Loan Rate)
    ☐ Policy Protection Rider - Quick (6% Fixed Loan Rate)

11. Additional Benefits:
    ☐ Cash Value Enhancement
    ☐ Disability Payment of Specified Premium:
      Monthly Specified Premium Amount $ _____
    ☐ Return of Premium Death Benefit Rider (with DB1 only)
      Increase rate  ☐ Yes _____%  ☐ No
      Percentage of Premiums to be returned at death (Whole numbers only. Maximum 100%) _____ %

    ☐ Accelerated Death Benefit (For terminal illness)
    ☐ Long-Term Care Rider (Please complete Application Supplement, NB5018)
      ☐ Long-Term Care Continuation Rider

    ☐ Other _____

NB5007US (12/2007)                                    Page 1 of 2                                    VERSION (01/2010)

**COVERAGE SELECTION  continued**

### UNIVERSAL LIFE – SINGLE LIFE continued

☐ **Accumulation UL – Total Face Amount $** . ....

12. Base Face Amount (if less than Total Face Amount) $ _ _ _ _ _ _ _ _

13. ☐ Supplemental Face Amount (SFA) (Check only one, if desired)
   ☐ Level SFA of $ _____ for the life of the policy
   ☐ Initial SFA of $ _____ for the life of the policy
   Increasing by: _____ % or $ _____ per year for _____ policy years (level thereafter)
   ☐ Customized Increasing Schedule (List by policy year. SFA decreases cannot be scheduled at issue.
       Please complete **Customized Schedule, NB5064**.)

14. Additional Benefits:
   ☐ Overloan Protection Rider                        ☐ Accelerated Death Benefit (For terminal illness)
   ☐ Cash Value Enhancement                          ☐ Long-Term Care Rider (Please complete **Application**
   ☐ Enhanced Surrender Value Rider                       **Supplement, NB5018**)
   ☐ Total Disability Waiver of Monthly Deductions       ☐ Long-Term Care Continuation Rider
   ☐ Return of Premium Death Benefit Rider (with DB1 only)
   Increase rate ☐ Yes _ _ _ _ %  ☐ No                ☐ Other            .
   Percentage of Premiums to be returned at death (Whole
   numbers only. Maximum 100%)  . . .  %

☑ **Performance UL – Total Face Amount $** 1,000,000.00  . . . . .

15. Base Face Amount (if less than Total Face Amount) $ _____

16. Supplemental Face Amount (SFA)
   ☐ Level SFA of $ _____ for the life of the policy    ☐ Other

17. Additional Benefits:
   ☐ Cash Value Enhancement                          ☐ Accelerated Death Benefit (For terminal illness)
   ☐ Total Disability Waiver of Monthly Deductions       ☐ Long-Term Care Rider (Please complete **Application**
   ☐ Return of Premium Death Benefit Rider (with DB1 only)    **Supplement, NB5018**)
   Increase rate ☐ Yes _____ %  ☐ No               ☐ Long-Term Care Continuation Rider
   Percentage of Premiums to be returned at death (Whole
   numbers only. Maximum 100%)  . . .  %               ☐ Other            .

### UNIVERSAL LIFE – SURVIVORSHIP LIFE

☐ **Protection SUL·G – Face Amount $**

18. Select the Policy Protection Rider listed in the illustration's Coverage Summary section.
   ☐ Policy Protection Rider  ☐ Policy Protection Rider – Enhanced  ☐ Policy Protection Rider – Flex

19. Additional Benefits:
   ☐ Cash Value Enhancement                          ☐ Disability Payment of Specified premium
   ☐ Return of Premium Death Benefit Rider (with DB1 only)    Life One – $ _____  Life Two – $ _ _ . _ _
   Increase rate  ☐ Yes _____ %  ☐ No             ☐ Four Year Term (EPR)
   Percentage of Premiums to be returned at death (Whole     ☐ Policy Split option
   numbers only. Maximum 100%)  . .  %                ☐ Other

☐ **Performance SUL – Total Face Amount $** _ _ . _ _ _ _

20. Base Face Amount (if less than Total Face Amount) $

21. ☐ Supplemental Face Amount (SFA) (Check only one, if desired)
   ☐ Level SFA of $ _____ for the life of the policy
   ☐ Initial SFA of $ _____ for the life of the policy
   Increasing by: _____ % or $ _____ per year for _____ policy years (level thereafter)
   ☐ Customized Increasing Schedule (List by policy year. SFA decreases cannot be scheduled at issue.
       Please complete **Customized Schedule, NB5064**.)

22. Additional Benefits:
   ☐ Cash Value Enhancement                          ☐ Four Year Term (EPR)
   ☐ Return of Premium Death Benefit Rider (with DB1 only)    ☐ Policy Split option
   Increase rate  ☐ Yes _ _ . . %  ☐ No               ☐ Other            .
   Percentage of Premiums to be returned at death (Whole
   numbers only. Maximum 100%)  _ _ _ _ _ %

### ☐ OTHER

23. Select One:              Face Amount                        Face Amount
   ☐ Single Life          $                   ☐ Survivorship Life    $



**Short Form Declaration of Insurability**

**John Hancock Life Insurance Company (U.S.A.)**
*(hereinafter referred to as The Company)*

Service Office:
Life New Business
197 Clarendon Street
Boston MA 02116-5010

RS/IMAGES OPS
2010 APR 15 AM 8: 34

- *This Form MUST be completed to update insurability when Medical Evidence is older than 90 days.*

94818952

If any of the following questions (1 - 7) are answered Yes, do not collect money - Do not deliver a policy, return the policy to NB Service Center.
No coverage will be in effect.

| Proposed Life Insured (Life One) | Proposed Life Insured (Life Two) |
|---|---|
| Name  First          Middle          Last | Name  First          Middle          Last |
| Irene  S   Bates | |

|  | Life One | Life Two |
|---|---|---|
| **Since the date of the last Medical Evidence form or Health Questionnaire:** | | |
| 1. Have you had any illness, injury, operation or treatment? | ☐ Yes ☐ No | ☐ Yes ☐ No |
| 2. Have you consulted, or been examined by any doctor? | ☐ Yes ☐ No | ☐ Yes ☐ No |
| 3. Has there been any change in your health? | ☐ Yes ☐ No | ☐ Yes ☐ No |
| 4. Do you have any symptoms or medical concerns for which you have not consulted a doctor or any consultation, testing or investigation recommended by a doctor which has not yet been completed? | ☐ Yes ☐ No | ☐ Yes ☐ No |
| **Since the date of the Application for Life Insurance:** | | |
| 5. Have you made application to any other life insurance company or have you been declined, or offered at other than standard rates by any other company? | ☐ Yes ☒ No | ☐ Yes ☐ No |
| 6. Has there been any change in your aviation, motor vehicle or power boat, skydiving/parachuting, skin or scuba diving or any other hazardous activities? If Yes, please complete the aviation and/or avocation questionnaire(s). | ☐ Yes ☒ No | ☐ Yes ☐ No |
| 7. Has there been any change in your tobacco or nicotine use? | ☐ Yes ☒ No | ☐ Yes ☐ No |

**Give full details of any Yes answers.**

| Question No. | Details |
|---|---|
| Life One | |

| Question No. | Details |
|---|---|
| Life Two | |

**Signatures**

I/We have read the statements and answers on this form and they are complete and true to the best of my/our knowledge and belief. I/We hereby agree that they shall form part of the application for which this information was required by The Company.

Signed at  City _Laguna Beach_  State _Ca_  This _April_  Day of _13th_  Year _2010_

X _____
Signature of Agent/Registered Representative (as Witness)

X _Irene S. Bates_
Signature of Proposed Life Insured One

X _____
Signature of Proposed Life Insured Two

NB5026US (01/2005)                    VERSION (01/2009)



John Hancock
the future is yours

Service Office:
Life New Business
197 Clarendon Street
Boston MA 02116-5010

**Medical Exam**

**John Hancock Life Insurance Company (U.S.A.)**
(hereinafter referred to as The Company)

This form is part of the Application for Life Insurance for the Proposed Life Insured.
Notice of Disclosure of Information form NB5006 must be used with this Medical Exam if it is being submitted on its own without the main application.
Print and use black ink. Any changes must be initialed by the Proposed Life Insured.

## PROPOSED LIFE INSURED

1. a) Name  _Irene_  _S._  _Bates_
    First     Middle     Last

    b) Date of Birth  3 | 13 | 1933
        month  day  year

    c) Social Security/Tax ID Number  _Deferred_

    d) Sex  ☐ Male   ☑ Female

## SMOKING STATUS

2. Have you ever used tobacco or nicotine products in any form (including cigarettes, cigars, cigarillos, a pipe, chewing tobacco, nicotine patches or gum)?
    ☐ Yes  ☑ No   If 'Yes', provide details below.

| Product: | Frequency: | Current | Past | Date Last Used month day year |
|---|---|---|---|---|
| Cigarettes | pack(s)/day | ☐ | ☐ | |
| Cigars | x /day | ☐ | ☐ | |
| Other: | x /day | ☐ | ☐ | |

## FAMILY QUESTIONS

3. Has any member of your immediate family (parents, brothers, sisters) died of Coronary Artery Disease or Cancer prior to age 60?  ☑ Yes  ☐ No

4. Please provide the following details.

| L I V I N G | Family History | Age | Give Details of Present State of Health | | D E C E A S E D | Family History | Age | Cause of Death |
|---|---|---|---|---|---|---|---|---|
| | Father | | | | | Father | | |
| | Mother | | REDACTED | | | Mother | | |
| | Brothers & Sisters | | | | | Brothers & Sisters | | |

5. a) Name and Address of Personal or Attending Physician

REDACTED

REDACTED

c) Date last consulted          Reason for consultation          Diagnosis/Result of visit

REDACTED

## HEALTH QUESTIONS

**Please complete Details for 'Yes' answers on page 3.**

6. **Within the last 10 years, have you had symptoms of, or been told by a physician that you have had or have:**

   a) Chest pain, angina, congestive heart failure, heart attack, shortness of breath, heart murmur, high blood pressure, irregular heart beat, heart valve disease or any other disease or disorder of the heart or arteries?

   b) Aneurysm, transient ischemic attack (TIA), stroke, or peripheral vascular disease?

   c) Diabetes, elevated blood sugar or glucose intolerance or disease of any glands?

   d) Seizures, fainting, dizziness, epilepsy, convulsions or paralysis?

   e) Any nervous, mental or emotional disorder, or received counseling for anxiety, depression, stress, or any other emotional condition?

   f) Alzheimer's disease, dementia, memory loss or organic brain syndrome?

   g) Multiple sclerosis (MS), muscular dystrophy, ALS (Lou Gehrig's disease), Parkinson's disease or tremors?

   h) Injuries due to falls or imbalance?

   i) Arthritis, gout, chronic fatigue, fibromyalgia, myalgia, osteoporosis, fractures, or any other bone, joint or muscle disorder?

   j) Asthma, sleep apnea, bronchitis, pneumonia, emphysema, chronic obstructive lung disease or any other lung disorder?

   k) Cirrhosis, hepatitis, ulcer, colitis, diverticulitis, Crohn's disease, or other disease of the liver, gall bladder, pancreas, stomach or intestines?

   l) Disease of the prostate, testicles, uterus, cervix, ovaries or breasts?

   m) Anemia, bleeding or clotting disorder, recurrent infection, or any problem, disease or disorder of the immune system, blood, blood cells or bone marrow or any lymph node disorders?

   n) Disease of the urinary tract, bladder or kidneys, sugar, protein or blood in the urine?

   o) Cancer, leukemia, lymphoma, malignant melanoma or tumors of any kind, malignant or benign?

   p) Any other health impairment or medically treated condition?

7. **Within the last 10 years have you had:**

   a) an operation or admission to a hospital or any other health care facility for observation and/or treatment of any illness, disease or accident?

   b) any diagnostic tests (e.g. blood, urine, EKGs, x-rays etc), whether conducted on an in-patient or out-patient basis?

8. Within the last 10 years have you been diagnosed or treated by a physician as having Acquired Immune Deficiency Syndrome (AIDS) or tested positive for the Human Immunodeficiency Virus (HIV)?

9. Do you:

   a) have any symptom or medical concern for which you have not consulted a physician or had any consultation, testing or investigation recommended by a physician which has not yet been completed?

   b) consume alcoholic beverages?

     **Complete if Currently was selected in 9 b)**

     **Complete if In the past was selected in 9 b)**

     Date Stopped

     Reason Stopped _____

10. **Within the last 10 years have you:**

   a) been advised to limit or discontinue the use of alcohol or drugs, sought or received treatment counseling or participated in a support group?

   b) used or tested positive for marijuana, cocaine, heroin, amphetamines, or hallucinogens?

   c) used any tranquilizers, sedatives or narcotic drugs or any prescription drug except in accordance with physician's instructions?

REDACTED

**Continuation of Exam**

Applicant _____ Bates, Irene S. _____
(Last)          (First)          (Middle)

Date of Birth _3/13/1933_   Date of Exam _11/20/2009_

Agent _Clive Taylor_   Agency _____

Insurance Co. _John Hancock_   Account number _____

Question number

REDACTED

REDACTED

REDACTED

REDACTED

5914-3  7/98

## HEALTH QUESTIONS continued

Details for Yes answers to Health Questions.
If more space is required, use the Medical Questions Continuation Sheet, NB5034US.

| Question No. | Date month day year | Reason and Treatment Given | Duration of Condition | Name, Address and Telephone Number of Attending Physician and Hospital |
|---|---|---|---|---|
| | | REDACTED | | REDACTED |

## AUTHORIZATION TO OBTAIN INFORMATION

I, the Proposed Life Insured, authorize:

1. The Company to obtain an investigative consumer report on me.

2. Any medical professional, medical care provider, hospital, clinic, laboratory, pharmacy or pharmacy benefit manager, insurance company, the MIB, Inc., or any other similar person or organization to give The Company and its reinsurers information about me or any minor child who is to be insured.

The information collected by The Company may relate to the symptoms, examination, diagnosis, treatment or prognosis of any physical or mental condition.

I further authorize The Company to disclose such information and any information developed during its evaluation of this application to: (a) its reinsurers; (b) the MIB, Inc.; (c) other insurance companies as designated by me; (d) me; (e) my insurance agent, when that agent is seeking insurance coverage through The Company on my behalf; (f) any medical professional designated by me; or (g) any person or entity entitled to receive such information by law or as I may further consent.

I acknowledge receipt of the Notice of Disclosure of Information relating to the underwriting process, investigative consumer reports and the MIB, Inc.

This authorization will be valid for two years from the date shown below. A photocopy of this authorization will be as valid as the original.

Information collected under this authorization will be used by The Company to evaluate my application for insurance, to evaluate a claim for benefits; or for reinsurance or other insurance purposes.

I am entitled, or my authorized representative is entitled, to a copy of this authorization.

## SIGNATURES

If the Proposed Life Insured is under age 15, Parent or Guardian must sign and include relationship.

I have read the statements and answers in this form and they are complete and true to the best of my knowledge and belief. I hereby agree that they shall form part of the application for life insurance for which this medical information was required by The Company.

| Signed at City | State | This | Day of | Year |
|---|---|---|---|---|
| Laguna Woods, | CA | 20 | 11 | 2009 |

Signature of Examiner as Witness

x _Arld C Kim MD_

Signature of Proposed Life Insured (Parent or Guardian, if under age 15)

_Darlene S. Gates_

Print Name of Examiner

_Arnold C. Kim_

Name of Agent (Please print)

_Clive Taylor_

Agent's Code

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John Kronstadt and the assigned discovery Magistrate Judge is Alicia G. Rosenberg.

The case number on all documents filed with the Court should read as follows:

## CV12- 2038 JAK (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X]** **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[_]** **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[_]** **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

William A. Hanssen (SBN 11061)
Suzanne V. Stouder (SBN 161077)
DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1400
Los Angeles, CA 90067
PH:  (310) 203-4000
Attorneys for Plaintiff THE JOHN HANCOCK LIFE
INSURANCE COMPANY (U.S.A.)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.), <br><br> PLAINTIFF(S) <br><br> v. <br><br> CLIVE TAYLOR, LUANN KING, KENNETH NUTLEY and DOES 1 - 10, <br><br> DEFENDANT(S). | CASE NUMBER <br><br> CV12-2038 JAK (AGRx) <br><br><br> **SUMMONS** |

TO:      DEFENDANT(S):

         A lawsuit has been filed against you.

         Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, William A. Hanssen, whose address is 1800 Century Park East, SUite 1400, Los Angeles, CA 90067. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:      MAR - 9 2012                    By:      SHEA BOURGEOIS
_____                    _____
                                           Deputy Clerk
                                           (Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*



**UNITED STATE** **DISTRICT COURT, CENTRAL DISTRIC** **F CALIFORNIA**
CIVIL COVER SHEET

| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐) | **DEFENDANTS** |
|---|---|
| THE JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.) | CLIVE TAYLOR, LUANN KING, KENNETH NUTLEY and JOHN DOES 1-10, |

| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| William A. Hanssen (Bar No. 110613) Suzanne V. Stouder (Bar No. 161077) DRINKER BIDDLE & REATH LLP 1800 Century Park East, Suite 1400 Los Angeles, CA 90067 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☐ **MONEY DEMANDED IN COMPLAINT: $** ↑75,000.00

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, fraud and negligence to determine John Hancock's rights and obligations regarding a purported life insurance policy

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☒ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | Disclosure Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R.& Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**CV12·2038**

**FOR OFFICE USE ONLY:**  Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

**UNITED STATE    DISTRICT COURT, CENTRAL DISTRICT    CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Michgan, Massachusetts |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Riverside |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Orange |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): *Suzanne V. Stouder*          Date  03/09/2012

Suzanne V. Stouder

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com